OPINION OF THE COURT
 

 Levine, J.
 

 Plaintiffs appeal, pursuant to leave granted by this Court, from an order of the Appellate Division which (1) reversed, on the law, an order of Supreme Court denying the motion for summary judgment of defendant (now deceased) Leroy L. Schwartz, M.D., dismissing the cross claim of defendant Lederle Laboratories; (2) granted that motion; and (3) dismissed the cross claim. The appeal from this order, which is final as to defendant Schwartz under the principle of party finality, brings up for review a prior nonfinal order of the Appellate Division, which affirmed an order of Supreme Court granting defendant Schwartz’s motion to dismiss plaintiffs’ complaint against him pursuant to CPLR 3211 (a) (7). Defendant Lederle Laboratories has not appealed the dismissal of its cross claim against defendant Schwartz. As set forth in the complaint, bill of particulars and other submissions in opposition to defendant Schwartz’s motion to dismiss, plaintiffs’ allegations, which we must accépt
 
 *610
 
 as true and accord every possible favorable inference therefrom (s
 
 ee, Leon v Martinez,
 
 84 NY2d 83, 87-88), would establish the following facts.
 

 In May 1979, based upon advice from Dr. Schwartz, plaintiffs Dominick and Elizabeth Tenuto presented their five-month-old daughter to him for a second dosage of an oral poliomyelitis vaccine manufactured by defendant Lederle Laboratories, trade named "Orimune.” Orimune and other similar oral vaccines consist of three live but weakened strains of the polio virus. Although the pharmaceutical manufacturer had rendered the viruses incapable of producing paralytic disease in a person receiving the vaccine, they cause the production of antibodies which will resist an attack by a wild or virulent polio virus. Typically, oral polio vaccines are administered to infants during their first year of life.
 

 While an oral polio vaccine of live viruses has significant clinical advantages over the alternative, original method of polio vaccination (discovered by Dr. Jonas Salk) involving injection of a vaccine containing killed or inactivated polio virus strains, oral vaccines carry certain unique risks. Notably, as is described in detail in
 
 Plummer v Lederle Labs.
 
 (819 F2d 349, 351-353,
 
 cert denied
 
 484 US 898), on a rare but statistically predictable basis, the live viruses lodging in the infant recipient’s gastrointestinal tract may grow and revert to virulent form. When those wild viruses are later discharged from the infant’s bowel in excretion or from the mouth in saliva, contact with the feces or saliva by the child’s adult caretakers may result in infection and, in the case of vulnerable adults (i.e., unvaccinated or where immunization has weakened over time), may result in paralytic polio.
 

 The foregoing risk of parental "contact” polio derived from oral vaccination of a child, has been known since 1961. By the 1970s, United States governmental health officials were recommending that consumers be advised of the risks as well as benefits of oral polio vaccines. Accordingly, as of 1977, defendant Lederle Laboratories included in its Orimune package insert some description of the risks and the recommendation, also reproduced in the Physician’s Desk Reference, that such danger be communicated to the parents when an infant is to be orally vaccinated, so that suitable precautions can be taken.
 
 *611
 
 The insert also warned against injection of the vaccine directly into the bloodstream.
 
 *
 

 Plaintiffs allege that Dr. Schwartz, although informed that Mr. Tenuto was about to undergo elective surgery, never inquired as to whether he had previously been vaccinated against polio nor advised plaintiffs of the risk of incurring contact polio and of the precautions necessary to prevent exposure, particularly in light of the surgical wound which would result from the immediately impending surgery of Mr. Tenuto.
 

 As a consequence, in caring for his daughter following his operation, Mr. Tenuto was exposed to virulent polio viruses. Within 30 days of the infant’s vaccination, Mr. Tenuto began to exhibit the symptoms of paralytic poliomyelitis and was then hospitalized and diagnosed as afflicted with that disease. His polio has rendered him a permanent paraplegic. Plaintiffs submitted, in camera, an affidavit from a qualified scientific expert that he was infected as a result of the oral vaccine administered to his daughter by Dr. Schwartz. A second affidavit, from a medical expert, expressed an opinion that, at the time the vaccine was administered to plaintiffs’ infant daughter, the standard of medical care required advising parents of the risk of contact polio and that appropriate precautions should be taken.
 

 The Tenutos subsequently brought this action against Dr. Schwartz and Lederle Laboratories, based on Mr. Tenuto’s personal injury and his wife’s derivative losses. Dr. Schwartz moved to dismiss the claims against him on the ground that they were based entirely on a failure to obtain the statutory informed consent mandated by Public Health Law § 2805-d— claims which would not lie because the Tenutos were not his patients. Supreme Court agreed and granted Dr. Schwartz’s motion. The Appellate Division affirmed for the same reason (207 AD2d 541).
 

 We now reverse. The courts below too restrictively read plaintiffs’ allegations contained in the complaint, bill of particulars and other papers. A statutory cause of action pursuant to Public Health Law § 2805-d was not the only cognizable legal theory upon which plaintiffs’ allegations rested
 
 (see, Leon v Martinez, supra,
 
 84 NY2d, at 87-88). Both expressly and
 
 *612
 
 by fair implication, plaintiffs have alleged that Dr. Schwartz owed them a duty of care based on common-law principles of ordinary negligence and malpractice. That duty, claimed by plaintiffs, consisted among other things, of complying with the recommendations of the vaccine manufacturer to warn plaintiffs of their personal health risks from the vaccination of their infant daughter, to assess the particular vulnerabilities of plaintiffs to those risks and to advise plaintiffs of precautions to avoid or minimize them. We have concluded, under the circumstances of this case, that a duty of reasonable care extended to plaintiffs despite the absence of a direct doctor/ patient treatment relationship between them and Dr. Schwartz.
 

 "The question of whether a member or group of society owes a duty of care to reasonably avoid injury to another is of course a question of law for the courts”
 
 (Purdy v Public Adm’r,
 
 72 NY2d 1, 8,
 
 rearg denied
 
 72 NY2d 953;
 
 see also, Eiseman v State of New York,
 
 70 NY2d 175, 187;
 
 De Angelis v Lutheran Med. Ctr.,
 
 58 NY2d 1053, 1055). Courts resolve legal duty questions by resort to common concepts of morality, logic and consideration of the social consequences of imposing the duty
 
 (see, Eiseman v State of New York, supra,
 
 at 187).
 

 In
 
 Eiseman,
 
 we recognized that, under appropriate circumstances, common morality, logic and social policy could permit a limited extension of the duty of care of a physician beyond the immediate patient under treatment. "In completing this particular report [of a physical examination of a patient], the physician plainly owed a duty of care to his patient and
 
 to persons he knew or reasonably should have known were relying on him for this service to his patient.
 
 The physician did not, however, undertake a duty to the community at large” (70 NY2d, at 188,
 
 supra
 
 [emphasis supplied]). In
 
 Purdy,
 
 we posited that one possible source of a limited expansion of a physician’s duty could be the existence of a special relationship, either between the physician and the injured nonpatient, or between the latter individual and the patient, where the physician knew or should have known that the nonpatient was relying upon the physician’s exercise of due care
 
 (see,
 
 72 NY2d, at 8,
 
 supra).
 

 Applying a special relationship-based expanded duty of care to warn a patient’s family of the risk of incurring an infectious or highly contagious disease from the patient is not a recent development in American tort law. In
 
 Davis v Rodman
 
 (147 Ark 385, 227 SW 612 [1921]), infected members of a typhoid-fever patient’s family sued the treating physician on the basis of the physician’s failure to warn and advise them concerning
 
 *613
 
 that highly communicable disease. Although the court ultimately dismissed the action for a failure to demonstrate proximate cause, the court found that physicians have such a duty, stating:
 

 "The relation of a physician to his patient and the immediate family is one of the highest trust.
 
 On account of his scientific knowledge and his peculiar relation, an attending physician is, in a certain sense, in custody of a patient afflicted with infectious or contagious disease. And he owes a duty to those who are ignorant of such disease, and who by reason of family ties, or otherwise, are liable to be brought in contact with the patient, to instruct and advise of them as to the character of the disease”
 
 (id.,
 
 at 391-392, 227 SW, at 614 [emphasis supplied]).
 

 (See, Bradshaw v Daniel,
 
 854 SW2d 865, 871-873 [Tenn Sup Ct], and cases and authorities cited therein;
 
 see also,
 
 Annotation,
 
 Liability of Doctor or Other Health Practitioner to Third Party Contracting Contagious Disease from Doctor’s Patient,
 
 3 ALR5th 370.)
 

 Another well-established predicate for extending a physician’s duty of care to third parties is when the service performed on behalf of the patient necessarily implicates protection of household members or other identified persons foreseeably at risk because of a relationship with the patient, whom the doctor knows or should know may suffer harm by relying on prudent performance of that medical service
 
 (see, Eiseman v State of New York, supra,
 
 70 NY2d, at 188;
 
 Miller v Rivard,
 
 180 AD2d 331, 337-338; Restatement [Second] of Torts § 324A [c];
 
 see also, DiMarco v Lynch Homes-Chester County,
 
 525 Pa 558, 561, 583 A2d 422, 424;
 
 Skillings v Allen,
 
 143 Minn 323, 325, 173 NW 663 [1919];
 
 Edwards v Lamb,
 
 69 NH 599, 45 A 480 [1899]).
 

 We need not fully delineate the class of persons who might fall within the scope of duty of a physician under the circumstances presented here. It is sufficient that the foregoing authorities easily support the imposition of a duty upon Dr. Schwartz to have warned these plaintiffs and advised them to take precautions if, as plaintiffs allege and their proof may establish, administration of oral polio vaccine to an infant creates a well-recognized danger to parents of incurring contact polio, particularly to a parent of special vulnerability as
 
 *614
 
 claimed here. Plaintiffs fall within a determinate and identified class — immediate family members — whose relationships to the person acted upon have traditionally been recognized as a means of extending and yet limiting the scope of liability for injuries caused by a party’s negligent acts or omissions
 
 (see, Bovsun v Sanperi,
 
 61 NY2d 219, 231-232;
 
 Miller v Rivard, supra,
 
 180 AD2d, at 338;
 
 Rademacher v Torbensen,
 
 257 App Div 91).
 

 Moreover, existence of a special relationship sufficient to supply the predicate for extending the duty to warn and advise plaintiffs of their peril and the need to employ precautions is especially pointed where, as here, the physician is a pediatrician engaged by the parents to provide medical services to their infant, and whose services, by necessity, require advising the patient’s parents. Thus, the special relationship factor is triangulated here, involving interconnections of reliance running directly between plaintiffs and Dr. Schwartz, and indirectly from their status and responsibility as the primary caretakers of his infant patient
 
 (see, Purdy v Public Adm’r, supra,
 
 72 NY2d, at 8;
 
 Skillings v Allen, supra,
 
 143 Minn, at 325, 173 NW, at 663 ["True, the child was defendant’s patient, but can it be said that, therefore, (the physician) owed no contractual duty to her parents by whom he was employed?”]).
 

 Similarly, in view of plaintiffs’ submission in opposition to the motion to dismiss, it would be inferable that in administering the vaccine and advising plaintiffs, as parents of his infant patient, Dr. Schwartz knew or should have known that his comprehensive services necessarily brought into play the protection of the health of plaintiffs, who relied upon his professional expertise in providing advice and other forms of medical services
 
 (see, Eiseman v State of New York, supra; DiMarco v Lynch Homes-Chester County, supra; Skillings v Allen, supra).
 
 Indeed, if Dr. Schwartz had no responsibility to pass on warnings regarding the dangers associated with the administration of this vaccine, then the duty of the manufacturer to inform doctors of such risks would be meaningless.
 

 Accordingly, the order of the Appellate Division should be reversed, with costs, and plaintiffs’ complaint against defendant Schwartz reinstated.
 

 Chief Judge Kaye and Judges Titone, Bellacosa, Smith, Ciparick and Wesley concur.
 

 Order reversed, with costs, and defendant Schwartz’s motion to dismiss plaintiffs’ complaint against him denied.
 

 *
 

 Plaintiffs also have alleged in their cause of action against Lederle Laboratories that the manufacturer’s warnings inadequately conveyed the severity of the risk.