[758 NYS2d 717]

FRANK PINGTELLA, JR., as Administrator of the Estate of VIRGINIA R. PINGTELLA, Also Known as GINGER R. PINGTELLA, Deceased, Plaintiff, and FRANK PINGTELLA, JR., Individually and as Parent and Natural Guardian of FRANK V. PINGTELLA, an Infant, Respondent, v LEELAND JONES, M.D., Appellant.

Fourth Department, May 2, 2003

### APPEARANCES OF COUNSEL

*Brown & Tarantino, LLP*, Buffalo *(Ann M. Campbell* of counsel), for appellant.

*Webster Szanyi LLP*, Buffalo *(Kevin A. Szanyi* of counsel), for respondent.

### OPINION OF THE COURT

LAWTON, J.

In this medical malpractice matter, we are asked to determine whether defendant psychiatrist owed a duty of care to the child of his patient. Defendant appeals from an order that, inter alia, denied those parts of his motion seeking dismissal of the cause of action for physical and psychiatric injuries on behalf of the child and the derivative cause of action for plaintiff's care of the child. On appeal, defendant contends that he owed no duty of care to the child, while plaintiff contends that, under the facts of this case, defendant owed a duty to the child to render proper and appropriate medical care to his mother. We agree with defendant.

On May 15, 1997, plaintiff's decedent, who at that time was no longer married to plaintiff, sought psychiatric treatment from defendant. The next day, decedent was admitted to Buffalo General Hospital with complaints of high stress and dissociation. She was diagnosed with "major depression with psychotic features" and was admitted for "stabilization." She was discharged on May 20, 1997. Defendant's discharge notes state:

> "She seemed to improve on this medication with no apparent side effects. She is unsure what she was going to do with her financial situation. She is the mother of an adolescent son, but is a single parent who just lost her job and has variable support. The patient will need good out patient follow up.

> "The patient will be followed up in the office. Day treatment program is recommended. The patient has declined this so far.

"Discharge medications: Zoloft 50 mg p.o. q.a.m. and Haldol 1 mg h.s.

"CONDITION ON DISCHARGE: She is ambulatory, non-suicidal. Some episodes of dissociation. Markedly improved mood and psychotic/dissociative features."

Decedent continued to see defendant for treatment on an outpatient basis. On June 17, 1997, she told defendant that she was improving because she and plaintiff were trying to reconcile. Soon after that visit, however, plaintiff informed decedent that he did not want to reconcile. On June 24, 1997, decedent stabbed her son, who was then nine years old, because she believed he was the devil. The child sustained stab wounds to his hands and legs and developed psychiatric problems.

In November 1997, decedent commenced a medical malpractice action against defendant. On April 2, 1999, she committed suicide. That action, with plaintiff as administrator of decedent's estate, was consolidated with a medical malpractice action against defendant commenced by plaintiff individually and as parent and natural guardian of his child. Defendant moved to dismiss the complaint on behalf of plaintiff individually and as parent and natural guardian of the child for failure to state a cause of action, and plaintiff cross-moved to serve, nunc pro tunc, a supplemental bill of particulars. Supreme Court granted the motion in part and dismissed plaintiff's individual claims, but denied the motion to the extent that it sought dismissal of the causes of action on behalf of the child and by plaintiff derivatively, for his care of the child. The court also granted the cross motion. This appeal ensued.

The issue whether defendant owed a duty of care to the child of his patient is one of law for a court to determine (see *Tenuto v Lederle Labs., Div. of Am. Cyanamid Co.*, 90 NY2d 606, 612 [1997]). "Foreseeability of injury does not determine the existence of duty" (*Eiseman v State of New York*, 70 NY2d 175, 187 [1987], citing *Strauss v Belle Realty Co.*, 65 NY2d 399, 402 [1985]). "[I]f foreseeability were the sole test[,] we could not logically confine the extension of liability" (*Albala v City of New York*, 54 NY2d 269, 273 [1981]). Rather, "[c]ourts resolve legal duty questions by resort to common concepts of morality, logic and consideration of the social consequences of imposing the duty" (*Tenuto*, 90 NY2d at 612, citing *Eiseman*, 70 NY2d at 187). In considering those concepts, we are compelled to conclude that defendant owed no duty of care to the child in this case.

"Although in limited circumstances a physician's duty of care has been extended to a patient's family members, our courts have been especially circumspect in doing so" (*Cohen v Cabrini Med. Ctr.*, 94 NY2d 639, 642 [2000] [no duty of care owed by defendant physician to plaintiff wife after he caused infertility of plaintiff husband]). A physician's duty of care is ordinarily owed exclusively to the physician's patients (*see Purdy v Public Adm'r of County of Westchester*, 72 NY2d 1, 9 [1988], *rearg denied* 72 NY2d 953 [1988]).

In *Tenuto* (90 NY2d at 611-612), relied upon by plaintiff, the Court of Appeals permitted plaintiff parents to assert a medical malpractice cause of action against defendant pediatrician based on injuries to plaintiff father. Defendant pediatrician gave a polio vaccination to plaintiffs' child but never warned plaintiff parents of the dangers of the vaccine, as recommended by the manufacturer and governmental health officials, and plaintiff father, whose immune system was weakened from surgery, contracted polio due to the vaccination of the child. In determining that defendant pediatrician owed a duty to plaintiff parents in that case, the Court of Appeals wrote:

> "[E]xistence of a special relationship sufficient to supply the predicate for extending the duty to warn and advise plaintiffs of their peril and the need to employ precautions is especially pointed where, as here, the physician is a pediatrician engaged by the parents to provide medical services to their infant, and whose services, by necessity, require advising the patient's parents. Thus, the special relationship factor is triangulated here, involving interconnections of reliance running directly between plaintiffs and [defendant physician], and indirectly from their status and responsibility as the primary caretakers of his infant patient (*see, Purdy * * *,* 72 NY2d, at 8; *Skillings v Allen,* [143 Minn 323, 325, 173 NW 663, 663 (1919)] ['True, the child was defendant's patient, but can it be said that, therefore, (the physician) owed no contractual duty to her parents by whom he was employed?'])" (*id.* at 614).

Here, the complaint alleges in relevant part that defendant's treatment of decedent constituted malpractice that resulted in injuries to her child. The bill of particulars and supplemental bill of particulars asserted, inter alia, that defendant failed to treat, diagnose, monitor and care for decedent in a proper man-

ner, failed to keep decedent hospitalized, failed to prescribe appropriate medication for decedent, failed to document decedent's psychiatric history and/or symptoms in a professional manner and used improper therapy, including inappropriate religious and/or spiritual reading material and/or audiotapes, failed to warn decedent's family members that decedent was experiencing psychotic episodes, and breached his duty to decedent's child, resulting in injuries to the child.

Plaintiff concedes that no relationship exists between defendant and the child herein. Consequently, "the imposition of a duty on defendant[ ] would have to arise out of some special relationship between defendant[ ] and [decedent] such as would *require [defendant] to control [decedent's] conduct for the benefit of [the child]" (Purdy,* 72 NY2d at 8). There was no such relationship here. Decedent did not seek treatment from defendant to prevent injury to her son. Defendant treated her severe depression to improve her mental health. Further, defendant had no control over decedent's conduct, and the record establishes that decedent had no history of violence.

In *Tenuto* (90 NY2d at 613-614), the Court of Appeals concluded that plaintiff parents were within a determinate class of immediate family members who should have been warned that "administration of oral polio vaccine to an infant creates a well-recognized danger to parents of incurring contact polio, particularly to a parent of special vulnerability as claimed here." Stated another way, the Court of Appeals has found that a physician has a duty to a person other than the patient when, "at the time the tort is committed[,] there are two identifiable beings within the zone of danger[,] each of whom is owed a duty independent of the other and each of whom may be directly injured" (*Albala,* 54 NY2d at 272). Here, the child was not an identifiable being within the zone of danger when the alleged malpractice was committed, and thus defendant owed no duty to him independent of the duty owed to his patient.

Decedent was a troubled woman who attacked her child. "While the temptation is always great to provide a form of relief to one who has suffered, it is well established that the law cannot provide a remedy for every injury incurred" (*id.* at 274). Were we to extend defendant's duty to the child herein, there would be a far-reaching effect on physicians who treat patients with children. Physicians should be permitted to limit their treatment to the best interests of the patient and leave to others the responsibility for the nonmedical concerns of third

parties who may be affected by that treatment. To hold otherwise could place unacceptable restraints on the treatment of patients and leave medical providers open to a broad array of possible claims. Family members of a patient could allege a broad range of physical and emotional damages from the physician's treatment of the patient. We are not willing to extend a physician's liability in that manner.

Plaintiff's reliance upon Restatement (Second) of Torts § 324A (a) to establish a duty independent of a showing of a special relationship because the failure of defendant to exercise reasonable care increased the risk of harm to his patient's child is unpersuasive. In *Cohen* (94 NY2d at 643), the Court of Appeals refused to apply section 324A (c) to malpractice liability to the patient's wife, stating that to do so "would be an unwarranted extension of our narrowly drawn jurisprudence with respect to malpractice liability to a patient's family member." The Court stated that "the purpose of the [fertility] procedure * * * was not to prevent physical harm to [the patient's wife] (*cf., Miller v Rivard,* [180 AD2d 331 (1992)]; Restatement [Second] of Torts § 324A), but to provide a benefit, that is, to promote conception by whatever means that goal could be achieved" (*id.*). That reasoning applies equally to section 324A (a).

Finally, plaintiff has offered no valid reason to carve out an exception for claims arising out of alleged medical malpractice for psychiatric treatment. Any distinction in that regard arises solely in cases where the patient was exclusively under the control of the medical provider, a situation not present in this case. In *Schrempf v State of New York* (66 NY2d 289, 295 [1985], quoting *Williams v State of New York*, 308 NY 548, 555 [1955]), the Court of Appeals determined that, when the State confines a patient for rehabilitation, " 'there is both a duty to the [patient] to provide him with reasonable rehabilitational conditions under the circumstances and to the outside public to restrain the dangerous, or potentially dangerous, so that they may not harm others.' " Here, decedent was not restrained in a facility. She was voluntarily hospitalized five weeks prior to the incident and, as previously noted, there is no evidence in the record that she was dangerous.

"In the absence of duty, there is no breach and therefore no liability" (*DeAngelis v Lutheran Med. Ctr.*, 84 AD2d 17, 22 [1981], *affd* 58 NY2d 1053 [1983]; *see Weed v Meyers*, 251 AD2d 1062 [1998] [causes of action on behalf of plaintiffs' children based on failure of defendant ophthalmologist to provide ge-

netic counseling to plaintiff father, his patient, were properly dismissed]). Consequently, plaintiff failed to state a cause of action against defendant on behalf of the child because defendant owed no duty of care to the child and, thus, plaintiff also failed to state a derivative cause of action against defendant, as the child's parent and natural guardian.

Accordingly, we conclude that the order should be modified by granting defendant's motion in its entirety and dismissing the causes of action on behalf of the child and by plaintiff derivatively as parent and natural guardian of the child.

GREEN, J.P., PINE, and HURLBUTT, JJ., concur.

It is hereby ordered that the order so appealed from be and the same hereby is unanimously modified on the law by granting defendant's motion in its entirety and dismissing the causes of action on behalf of Frank V. Pingtella, an infant, and by plaintiff derivatively as parent and natural guardian of Frank V. Pingtella, an infant, and as modified the order is affirmed without costs.