(January 15, 2008)

■ KYTEL INTERNATIONAL GROUP, INC., Respondent, v TOTAL-TEL CARRIER SERVICES, INC., Also Known as COVISTA CARRIER SERVICES, INC., et al., Appellants. KYTEL INTERNATIONAL GROUP, INC., Appellant, v TOTAL-TEL CARRIER SERVICES, INC. Also Known as COVISTA CARRIER SERVICES, INC., et al., Respondents. [851 NYS2d 5]—

Order, Supreme Court, New York County (Karla Moskowitz, J.), entered February 20, 2007, which, to the extent appealed from, granted defendants' motion to dismiss the amended complaint as barred by the statute of limitations, affirmed, with costs. Appeal by defendants from order, same court and Justice, entered April 13, 2006, to the extent it granted plaintiff leave to amend the complaint, dismissed as academic, without costs.

Construing the amended complaint liberally and giving it every favorable inference, that pleading still does not present factual allegations that would estop defendants from asserting the two-year statute of limitations (47 USC § 415 [a]) as a defense. Those allegations state simply that defendants, during the two-year period following plaintiff's discovery that one of its

customers was rerouting calls through plaintiff's network in order to achieve a more favorable rate, denied responsibility. They do not assert any affirmative steps by defendants to conceal their own responsibility for the rerouting in order to prevent plaintiff from bringing a timely action (*see Simcuski v Saeli*, 44 NY2d 442, 448-449 [1978]). Moreover, the allegations fail to establish that plaintiff acted with the requisite due diligence either in ascertaining who was responsible for the rerouting or in bringing the action once it purportedly discovered defendants' alleged responsibility (*Pahlad v Brustman*, 33 AD3d 518, 519-520 [2006], *affd* 8 NY3d 901 [2007]).

Plaintiff's backbilling of defendants in December 2002 did not commence a new limitations period. The time of the wrong from which accrual is measured was, at the latest, when plaintiff learned that calls were being rerouted (*see generally MCI Telecom. Corp. v Teleconcepts, Inc.*, 71 F3d 1086 [3d Cir 1995], *cert denied* 519 US 815 [1996]).

Plaintiff offers no justification as to why the six-year statute of limitations for fraud should apply when it otherwise concedes that the case is governed by the two-year federal statute, which applies to "All actions at law by carriers for recovery of their lawful charges." (47 USC § 415 [a].) Concur—Lippman, P.J., Tom and Gonzalez, JJ.

Marlow and Malone, JJ., concur in a separate memorandum by Marlow, J., as follows: Plaintiff Kytel International Group, Inc. is a long-distance telecommunications carrier that owns its own network and switching facilities in Manhattan. As a carrier, Kytel sells long-distance phone services to other carriers on a per-minute basis. Those carriers then transmit their long-distance phone traffic over Kytel's network to various locations around the world. Defendants Total-Tel Carrier Services and its successor in interest, Covista Communications, Inc. (collectively defendants), are long-distance telecommunications carriers also engaged in the sale of long-distance phone service to other carriers, which, in turn, transmit long-distance phone traffic worldwide.

In June 1998, Kytel and Total-Tel entered into a carrier agreement, by which Kytel would provide defendants access to its network of facilities. Total-Tel was just one of several companies contracting with Kytel. Pursuant to the agreement, for all calls placed to destinations not specifically quoted therein, the rate was $1.50 per minute. Calls placed to the United Kingdom were billed at 11 cents per minute.

As relevant to this appeal, Kytel sent weekly invoices to its customers, including defendants, for certain calls placed in

September and October 2000 on a per-minute basis. A portion of those billings was for calls that had apparently been placed to the United Kingdom. In November 2000, upon receipt of rebilling by its own provider, Kytel learned that certain calls made on its network had not been placed to the United Kingdom, but, rather, had been diverted to other destinations, not specifically identified in the agreement, such as Yemen, Pakistan and India.

According to the amended complaint, Kytel immediately inquired of all its carriers, including defendants, whether they had any knowledge or information about the diverted calls. They all denied diverting the calls. Kytel alleged that defendants, through their vice-president, continued to deny knowledge despite being questioned by Kytel between November 2000 and October 2002. Finally, according to Kytel, in November 2002, defendants' vice-president of sales admitted responsibility for the rerouting. One month later, Kytel sent amended invoices to defendants, amounting to more than $1.7 million in additional charges. Defendants refused to pay these additional charges.

Consequently, in June 2003, Kytel commenced this action to recover the additional charges. Defendants moved, inter alia, to dismiss the complaint as barred by the two-year statute of limitations provided by the Communications Act of 1934 (47 USC § 415 [a]). As relevant to this appeal, Supreme Court referred the statute of limitations issue to an arbitrator, and, on appeal, this Court remanded on the ground that, under New York law, this threshold question was to be resolved by a court, not an arbitrator (22 AD3d 250 [2005]). On remand, Supreme Court granted defendants' motion to dismiss the action as untimely, "without prejudice" to plaintiff's amending the complaint to allege a more detailed claim for backbilling.* In May 2006, Kytel served an amended complaint alleging that (1) between November 2000 and October 2002, it had inquired about the diverted calls of all its customers, including defendants, (2) defendants denied knowledge of the diverted calls, and (3) within one month of learning the identity of the offending customer, Kytel sent amended bills. Defendants moved again to dismiss the amended complaint as untimely. Supreme Court, inter alia, dismissed the complaint, finding that the cause of action had accrued, not, as plaintiff argued, in November 2002, when it discovered which customer had diverted the calls, but in November 2000, when it discovered that certain calls had been diverted.

---

* Defendants appeal separately from this order, and the majority dismisses the appeal as academic. However, were plaintiff's action allowed to proceed, I would affirm this order.

We are being asked on this appeal to reward defendants for alleged dishonest and deceitful conduct. Indeed, at this pre-answer juncture of the litigation, plaintiff's allegations, which must be accepted as true (*see Nick v Greenfield*, 299 AD2d 172, 173 [2002]) and from which every possible favorable inference must be accorded (*see Tenuto v Lederle Labs., Div. of Am. Cyanamid Co.*, 90 NY2d 606, 609-610 [1997]), remain unanswered. In moving to dismiss, defendants maintain, in effect, that because Kytel did not catch them in their lie soon enough, it should be barred from recovering almost $2 million in services that defendants have not denied diverting in order to circumvent the higher per-minute rate.

Assuming Kytel's allegations remain unchallenged, or are proven true, this is a case that cries out for equitable relief. Indeed, it is a basic tenet of our jurisprudence that "no man may take advantage of his own wrong"; this principle has frequently been applied in equity "to bar inequitable reliance on statutes of limitations" (*General Stencils v Chiappa*, 18 NY2d 125, 127-128 [1966], quoting *Glus v Brooklyn Eastern Dist. Terminal*, 359 US 231, 232-233 [1959]; *see also Simcuski v Saeli*, 44 NY2d 442, 448 [1978] [fraudulent representations may provide a basis, in equity, for equitable estoppel, barring a defendant from invoking the statute of limitations as a defense]).

The statute of limitations at issue here is governed by federal statute. Fraudulent concealment is an equitable doctrine read into every federal statute of limitations (*Riddell v Riddell Washington Corp.*, 866 F2d 1480, 1491 [DC Cir 1989]). Consequently, fraudulent concealment of a cause of action provides a basis to toll the running of the statute of limitations (*see Stone v Williams*, 970 F2d 1043, 1048 [2d Cir 1992], *cert denied* 508 US 906 [1993]; *Barrett v United States*, 689 F2d 324, 327 [2d Cir 1982], *cert denied* 462 US 1131 [1983]).

To invoke the doctrine of fraudulent concealment, a plaintiff "must plead and prove (1) the wrongful concealment by the defendant of its actions, (2) the failure by the plaintiff to discover the operative facts underlying the action within the limitations period, and (3) the plaintiff's due diligence to discover the facts" (*Donahue v Pendleton Woolen Mills, Inc.*, 633 F Supp 1423, 1443 [SD NY 1986]). The burden is on the party pleading fraudulent concealment, and any delay relating to plaintiff's ignorance of the facts constituting a cause of action "must be consistent with the requisite diligence" (*id.*). Indeed, "time does not begin to run until plaintiff discovers, or by reasonable diligence could have discovered, the basis of the lawsuit" (*Barrett*, 689 F2d at 327, quoting *Fitzgerald v Seamans*, 553 F2d 220,

228 [DC Cir 1977]). Once the duty of inquiry arises, "plaintiff is charged with whatever knowledge an inquiry would have revealed" (*Stone*, 970 F2d at 1049).

While I reluctantly concur with the ultimate result, I must disagree with the majority's conclusion that defendants failed to take affirmative steps to conceal their own responsibility for the rerouting, thus failing to satisfy the first prong of the fraudulent-concealment pleading requirement. Defendants did not merely remain silent or engage in passive conduct (*see generally Donahue* at 1443). Rather, Kytel alleges that defendants affirmatively lied to Kytel, repeatedly and over the course of two years, about their role in the diversion of services (*cf. Hobson v Wilson*, 737 F2d 1, 34-35 [DC Cir 1984], *cert denied sub nom. Brennan v Hobson*, 470 US 1084 [1985] [deception may be as simple as a single lie where the defendant conceals its involvement and the conduct itself]).

I also take issue with Supreme Court's conclusion that the cause of action accrued when plaintiff first discovered that phone calls were being diverted to appear as though their ultimate destination was one with a significantly lower per-minute rate. At that time, plaintiff would have had no idea which customer to sue nor, for the same reason, would it have been able to make a sufficient showing to obtain pretrial discovery. Surely, Kytel could not, nor should have been, expected to sue all its customers, based on a mere hope that the guilty party would "shake out" during the litigation process. Rather, it makes far more sense—and in my judgment it is only fair—to calculate Kytel's time to commence the action from the date it became aware of the identity of the entity against which it could allege a viable cause of action. This, in turn, raises the question whether Kytel exercised due diligence to identify the offending customer.

The question whether Kytel timely commenced the action based on the later accrual date thus depends on what efforts Kytel made or could have made during the period beginning when it first discovered the diversion until the time it discovered the culprit. However, the record is devoid of any allegations that would inform us of the practicality or difficulty of obtaining this information. I am forced to agree that Kytel's opposing papers, even affording it every favorable inference, fail to allege sufficiently that Kytel acted with due diligence to ascertain the identity of the offending customer. Specifically, Kytel fails to outline what steps, if any, it undertook to ascertain the identity of the wrongdoer, or on what basis it was unduly burdensome, impracticable, or impossible to ascertain this information earlier

than the moment defendants admitted their guilt. This omission, in my opinion, renders it impossible to save Kytel's complaint from dismissal.

Kytel's complaint also would have survived, as it presently stands, under the markedly different—and in my view better—approach taken by the United States Court of Appeals for the District of Columbia Circuit. That court stated that when the statute of limitations is tolled because a defendant has concealed the cause of action, defendant has "the burden of coming forward with any facts showing that the plaintiff could have discovered [defendant's] involvement or the cause of action if he had exercised due diligence" (*Richards v Mileski*, 662 F2d 65, 71 [DC Cir 1981]; *see also Hobson*, 737 F2d at 35; *Riddell*, 866 F2d at 1491). Even though Kytel was aware at an early date that it had been defrauded, there was more than one customer in a position to be the offending party. Kytel clearly had a cause of action for breach of the agreement and, in my view, sufficiently pleaded that defendants wrongfully concealed their actions, causing Kytel to be unable to discover the facts underlying the action within the limitations period. However, the record is barren of any indication of what avenues, if any, were reasonably available to plaintiff to ferret out the offending party in the face of all its customers' denials. Even at this early prediscovery stage of the litigation, that gap in the record, most unfortunately in my opinion, redounds to Kytel's detriment.

I would therefore favor a policy that would shift the burden on the issue of due diligence to a defendant alleged to have actively and repeatedly denied its fraudulent conduct in a situation like this, where it was not the only possible culprit. Such a policy would better serve a goal of equity to protect a defrauded plaintiff by placing the burden on the party that ought to bear it, i.e., the alleged concealing and deceitful wrongdoer.