OPINION OF THE COURT
Joseph J. Maltese, J.
This court decided before the trial of this matter that the deceased divorced wife of the plaintiff, who discontinued her derivative consortium claims in this products liability and medical malpractice action, was not an “interested” person in the outcome of the case in accordance with the “Dead Man’s Statute” of Civil Practice Law and Rules § 4519. Consequently, the plaintiff was permitted to use her deposition in his case-in-chief. This decision memorializes that oral decision made on the eve of trial.
Facts
The defendant, John Bishop, as the executor of the estate of Leroy L. Schwartz, M.D. (Dr. Schwartz), moved just prior to trial, pursuant to CPLR 4519, for an order precluding the testimony of Elizabeth Heika, the former wife of the plaintiff Dominick Tenuto. The uncontested facts are that in 1980 Dominick Tenuto and his wife, Elizabeth Heika commenced an action against Lederle Laboratories (Lederle), a division of American Cyanamid Company, and Dr. Schwartz, alleging that Dominick Tenuto contracted polio after coming into contact with the feces of his infant daughter while changing her diaper, after she was administered the oral polio virus vaccine under the direction of Dr. Schwartz in 1979. Dominick Tenuto and *508 Elizabeth Heika divorced in 1984. However, Ms. Heika remained a plaintiff in this action until December 1997, when she voluntarily discontinued her action against the defendants.
In 1992, the estate of Dr. Schwartz successfully moved before Justice Edward Amann to dismiss the plaintiffs complaint, claiming that Dr. Schwartz, as a pediatrician, had no duty to warn the parents of the infant patient of the risks of an oral polio vaccine which he administered to their daughter. The Appellate Division, Second Department, affirmed the trial court decision in 1994.[1]
On October 23, 1997, the Court of Appeals reversed the lower courts and reinstated the complaint against Dr. Schwartz.[2] The Court of Appeals held that Dr. Schwartz, as a pediatrician, owed a duty of care to the parents as primary caregivers of the infant based upon common-law principles of ordinary negligence and malpractice to warn them of the potential risks of contact with the infant’s feces and sputum after taking the oral polio vaccine. As the treating physician, Dr. Schwartz was in a position between Lederle, the manufacturer of the polio vaccine, and the infant patient to use his professional or learned knowledge of the benefits and risks of the vaccine to the patient, baby Diana Tenuto, and her parents, who cared for her. As the “learned intermediary,” the late Dr. Schwartz, a pediatrician, had a duty to read the package insert describing the proper use of the vaccine and its risks of harm as a live oral polio virus, and to warn the parent caretakers of such risks. Apparently, Dr. Schwartz gave no warnings of the risks of the oral polio vaccine to either parent. Dr. Schwartz unexpectedly died prior to appearing for an examination before trial, and before Elizabeth Heika’s depositions.
On June 18, 1997, Ms. Heika appeared for an examination before trial. However, Dr. Schwartz’s counsel did not attend the deposition because he was dismissed from the case and the Court of Appeals had not reinstated the complaint against him at that time. After the Court of Appeals reinstated Dr. Schwartz as a defendant, the parties held an additional examination before trial on January 26, 1998 which counsel for Dr. Schwartz’s estate attended.
Ms. Heika died prematurely of cancer shortly after her deposition in 1998. During those depositions, Ms. Heika testified *509 about conversations with Dr. Schwartz, where she maintained that she advised Dr. Schwartz that her husband was undergoing anal fissure surgery at Mt. Sinai Hospital. In the deposition she stated that Dr. Schwartz did not give her or her former husband any warnings of the potential risks of the live oral polio vaccine, nor did he inquire whether either of them had been inoculated or whether they ever had any booster shots for the polio vaccine.
Discussion
The issue this court was called upon to determine is whether Ms. Heika was an “interested witness” when she gave testimony during her depositions. The plaintiff argued that Ms. Heika voluntarily discontinued her cause of action against the defendants and therefore had no monetary interest in the outcome of the litigation. Counsel for the estate of Dr. Schwartz argues that during her second deposition, Ms. Heika admitted that she was jointly liable with the plaintiff for approximately $150,000 in medical bills. Plaintiffs counsel asserted that when the plaintiff qualified for Social Security benefits this debt was expunged. At oral argument it was conceded that the existence of a Medicaid lien can neither be confirmed nor denied.
Defendant claims that the plaintiff cannot offer Ms. Heika’s deposition testimony concerning her conversations with Dr. Schwartz pursuant to CPLR 4519, commonly known as the “Dead Man’s Statute,” which states in pertinent part that
“a person interested in the event . . . shall not be examined as a witness in his own behalf or interest . . . concerning a personal transaction or communication between the witness and the deceased person . . . except where the executor, administrator, survivor, committee or person so deriving title or interest is examined in his own behalf, or the testimony of the mentally ill person or deceased person is given in evidence, concerning the same transaction or communication.”
Professor Vincent C. Alexander in his Practice Commentaries to CPLR 4519 states that the statute
“consists of essentially three elements: (1) Any person ‘interested in the event,’ or a predecessor in interest of such person, may not testify in his or her own behalf or that of the successor in interest against (2) certain protected persons with a specified relationship to a decedent or mentally ill person *510 (3) concerning a transaction or communication with the decedent or mentally ill person.”[3]
There is an extensive body of case law interpreting when a person is interested in an event. Judge Benjamin Cardozo, in 1916 when he was on the New York Court of Appeals, addressed the criteria that defines when a witness is interested in an event in Franklin v Kidd, where he held: “An interest sufficient to disqualify . . . must not be ‘uncertain, remote or contingent’ . . . Gain or loss must result to him from the judgment in its direct or immediate operation.”[4]
The party seeking the protection of the Dead Man’s Statute bears the burden of demonstrating that the witness’ testimony is subject to the statutory exclusion.[5] Here the attorneys for the estate of Dr. Schwartz proffered the following evidence that they believed demonstrated Ms. Heika’s status as an interested witness: (1) that Ms. Heika maintained a relationship with her three daughters, two of whom have college loans; (2) that Ms. Heika and the plaintiff, Dominick Tenuto, jointly owed $150,000 for medical bills; and (3) had Ms. Heika survived, she could have attempted to modify the judgment of divorce to reflect a money judgment that Mr. Tenuto could be awarded from the conclusion of his pending negligence matter.
It is the court’s determination that the defendant’s argument that Ms. Heika’s children with Mr. Tenuto may benefit from a verdict in his favor is unpersuasive. The plaintiff correctly argues the benefit to their mutual offspring would not benefit Ms. Heika by the “direct legal operation of the judgment.”[6] Moreover, absent a court order or an agreement, parents are under no legal obligation to satisfy debts incurred by their adult children’s college loans or other debts. Indeed, neither parent is obligated to give or bequeath anything to any child. Therefore, the fact that the plaintiffs children had college loans would not render Ms. Heika an interested witness.
The plaintiffs counsel produced the affidavit of Dominick Tenuto who avers that his $150,000 in outstanding medical bills was taken over by a third-party payer after he was determined to be disabled by the Social Security Administration. Plaintiffs counsel argues that his cocounsel informed the defendant that *511 this indebtedness was expunged nearly 25 years ago. The defendants had an opportunity to question Ms. Heika during her second deposition where she revealed that she believed that she had not paid any amount toward her former husband’s medical bills; nor did she know if he had paid any amount toward that debt. While the interrogatories were not annexed as an exhibit to either the defendant’s motion or the plaintiffs opposition, the following excerpts from the bill of particulars of Dominick Tenuto and Elizabeth Heika were read into the record by counsel for the defendant:
“Question, 34, with respect to your claim for damages, state whether you seek to recover necessary and reasonable medical expenses. And, if so, (a), set forth the monetary amount, and, (b), identify or produce documents relied upon in calculating. “[Plaintiff’s] answer is [to question 34], Plaintiff seeks to recover necessary and reasonable medical expenses, (a), according to bills currently in the possession of the plaintiff, they have expended monies for medical expenses totaling 162,000.” (Emphasis added.)
Thereafter, counsel for the defendant requested that counsel for the plaintiff direct her to language that indicates where it was disclosed that the medical bills for $162,000 were paid. Counsel for the defendant indicated that the operative word is “expended.” The plaintiffs affidavit avers that the debt was extinguished. Absent any proof introduced by the movant that any debts exist for which she can be held liable, this court finds that the movant estate failed to meet its burden to demonstrate that Dominick Tenuto’s outstanding medical bills would make Elizabeth Heika a person “interested” in this case.
The defendant’s final argument to deem Ms. Heika as an interested witness concerns her apparent ability to move for a modification of the 1984 divorce decree based on her ex-husband’s change of financial circumstances in the event his lawsuit was successful'. That argument is speculative and not in conformance with domestic relations case law, which may allow a modification of a divorce judgment where there is an unanticipated change of circumstances.[7] Here, however there would not have been a change of circumstances because both Dominick Tenuto and Elizabeth Heika had been seeking a large monetary *512 recovery from the defendants since 1980 due to Mr. Tenuto’s contraction of polio in 1979. After an in camera inspection of Dominick Tenuto’s and Elizabeth Heika’s matrimonial file, this court finds that the parties did not provide for any sharing in any recovery of Dominick Tenuto’s lawsuit and waived any claims or debts against each other. Since a verdict in this matter was foreseeable at the time of the divorce, this court finds that even had Elizabeth Heika survived, she would not have been able to modify the judgment of divorce to share in any money the plaintiff may recover from this action, other than from her derivative loss of services and consortium claim, which she voluntarily discontinued.
This court found that Elizabeth Heika ceased to be an “interested” party or person in this action when she divorced the plaintiff and when she voluntarily discontinued her claim against the defendants.[8] In so doing, she became unable to directly benefit in the event that the plaintiff may be awarded any money. Therefore, she was not a person “interested” in the outcome of this case and her deposition may be used because she is unavailable to testify due to her death.
Accordingly, it was ordered that the defendant’s motion to preclude the use of Elizabeth Heika’s deposition testimony was denied.

. Tenuto v Lederle Labs, Div. of Am. Cyanamid Co., 207 AD2d 541 (2d Dept 1994).

. Tenuto v Lederle Labs., Div. of Am. Cyanamid Co., 90 NY2d 606 (1997).

. Alexander, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C4519:l, at 562 (2007 ed).

. Franklin v Kidd, 219 NY 409, 411-412 (1916).

. See Stay v Horvath, 177 AD2d 897, 899 (3d Dept 1991).

. Connelly v O’Connor, 117 NY 91, 93 (1889).

. See Matter of Boden v Boden, 42 NY2d 210 (1977); see Friedman v Friedman, 65 AD3d 1081 (2d Dept 2009).

. See Beehard v Eisinger, 105 AD2d 939 (3d Dept 1984) (wife deemed not to be an interested witness under CPLR 4519 after discontinuing a derivative suit based on her husband’s claim of medical malpractice).