OPINION OF THE COURT
Lawrence H. Ecker, J.
On the motion of Valdemiro Santos and Regina Santos (defendants), made pursuant to CPLR 3211 (a) (7), to dismiss the complaint, filed by Sálete Martins Alves (plaintiff), the court determines as follows:
In this action for personal injury and wrongful death, the essential facts of this tragic drowning accident are not in dispute. On May 25, 2014, plaintiff, her husband, Belarmino C. Alves (decedent), and their two teenage sons, ***** and *****, went to visit defendants, their longtime friends, for a Memorial Day weekend barbeque at defendants’ home in Pound Ridge, New York. The Alves family arrived at approximately 1:00 p.m. and shortly afterwards, decedent and Mr. Santos began consuming alcoholic beverages. The two men continued drinking throughout the day and evening. At approximately 11:00 p.m. they decided to go into the backyard swimming pool, despite the fact they were both highly intoxicated. At that hour, plaintiff and Ms. Santos were inside the house and had not been drinking alcohol. ***** was outside with his father and Mr. Santos. When he saw his father jump into the pool with his clothes on, he went inside and alerted his mother and Ms. Santos who walked out onto a balcony that overlooked the pool. Plaintiff observed her husband standing in the pool “fully clothed, extremely loud and acting inappropriately.” (Aff of plaintiff ¶ 11.) Mr. Santos was in the heated spa.[1] The two women then walked back into the house where they sat and drank tea. (Aff of plaintiff ¶ 14.) Approximately 10 minutes later, when they walked out onto the balcony to check on their husbands, plaintiff observed her husband on the bottom of the pool. Both sons, ***** and *****, jumped into the pool and pulled out their father. (Aff of plaintiff ¶ 15.) ***** and Ms. Santos performed CPR until the paramedics arrived, but it was too *801 late. Decedent remained in a coma and died the following day. The cause of death was asphyxia due to drowning. According to the autopsy report, decedent had alcohol and several prescribed medications present in his body. (Aff of plaintiff ¶ 16; plaintiffs exhibit C.)
Plaintiff brings this action as administratrix of her late husband’s estate. The distributees are plaintiff and her two infant children. Plaintiff’s theory of liability is that defendants, as the property owners, owed a duty of care to provide reasonable supervision to their guests, including decedent, and acted with negligence, recklessness, and carelessness by allowing him in his highly intoxicated state to use the swimming pool that night, such that they are responsible for decedent’s death by drowning. The complaint also alleges defendants breached their duty to maintain the subject “premises,” specifically the outdoor, in-ground swimming pool, in a safe and proper condition, free and clear of any hazardous conditions, and that by inviting decedent to use the swimming pool despite his intoxicated condition, defendants were aware of and failed to warn decedent of the “dangerous condition” of the swimming pool, failed to equip the pool with lifelines, life preservers or other rescue equipment, and failed to exercise due care and diligence by not restraining decedent from using the pool after they knew he had been drinking for 10 hours and was highly intoxicated. Further, Mr. Santos, due to his own intoxication, was incapable of providing supervision to decedent, and Ms. Santos failed to take some action to prevent decedent, or Mr. Santos, from allowing decedent to enter the swimming pool as was witnessed by plaintiff, his widow, who stood side by side with Ms. Santos while this was taking place.[2] In her affidavit, plaintiff stated, “Mrs. Santos stated that she felt ‘weird’ leaving them in the pool because they were ‘way too drunk.’ Mrs. Santos then said, T don’t believe it is safe for them to be in the pool.’ ” (Aff of plaintiff ¶ 13.)
Defendants have moved to dismiss the complaint pursuant to CPLR 3211 (a) (7). On a motion to dismiss pursuant to CPLR 3211 (a) (7), the standard is whether the pleading states a cause of action, not whether the proponent of the pleading has a cause of action. In considering such a motion, the court must accept the facts as alleged in the complaint as true, accord *802 plaintiff the benefit of every possible favorable inference, and determine only whether the facts as alleged fit within any cognizable legal theory. (Rodriguez v Daily News, L.P., 142 AD3d 1062 [2d Dept 2016].) That is, such a motion to dismiss should be granted only where, even viewing the allegations as true, the plaintiff cannot establish a cause of action. (Sokoloff v Harriman Estates Dev. Corp., 96 NY2d 409 [2001]; Leon v Martinez, 84 NY2d 83, 87 [1994]; Anderson v Armentano, 139 AD3d 769 [2d Dept 2016].) In undertaking this task, the court has the complaint (verified by plaintiff’s attorney), plaintiff’s affidavit, the police incident report and the autopsy report, all as submitted in opposition to the motion.
“The threshold question in any negligence action is . . . [whether] defendant owe[s] a legally recognized duty of care to [the] plaintiff.” (Hamilton v Beretta U.S.A. Corp., 96 NY2d 222, 232 [2001].) “The question of whether a member or group of society owes a duty of care to reasonably avoid injury to another is . . . [one] of law for the courts.” (Purdy v Public Adm’r of County of Westchester, 72 NY2d 1, 8 [1988], rearg denied 72 NY2d 953 [1988].) “Courts resolve legal duty questions by resort to common concepts of morality, logic and consideration of the social consequences of imposing the duty.” (Tenuto v Lederle Labs., Div. of Am. Cyanamid Co., 90 NY2d 606, 612 [1997].) When conducting this analysis, “[d]espite often sympathetic facts in a particular case before them, courts must be mindful of the precedential, and consequential, future effects of their rulings, and ‘limit the legal consequences of wrongs to a controllable degree.’ ” (Lauer v City of New York, 95 NY2d 95 [2000], quoting Tobin v Grossman, 24 NY2d 609, 619 [1969].) A critical consideration in determining whether a duty exists is whether “the defendant’s relationship with either the tort-feasor or the plaintiff places the defendant in the best position to protect against the risk of harm.” (Hamilton at 233.) But the courts have repeatedly emphasized that the “foreseeability of harm does not define duty” (532 Madison Ave. Gourmet Foods v Finlandia Ctr., 96 NY2d 280, 289 [2001]); rather it “merely determines the scope of the duty once it is determined to exist.” (Hamilton at 232.) Consequently, “[a]bsent a duty running directly to the injured person there can be no liability in damages, however careless the conduct or foreseeable the harm.” (532 Madison Ave. Gourmet Foods v Finlandia Ctr. at 289.) The court is also mindful that courts are generally reluctant to extend liability to a defendant for failing to control the conduct *803 of others, but a court may do so where it finds that the defendant had actual control over the third person’s actions. (Hamilton at 233; Arango v Vasquez, 89 AD3d 875, 876 [2d Dept 2011]; Demshick v Community Hous. Mgt. Corp., 34 AD3d 518, 520 [2d Dept 2006].)
A property owner owes a duty to maintain its property in a reasonably safe condition, whether to licensees, trespassers or invitees. (Basso v Miller, 40 NY2d 233, 241 [1976].) Here, decedent was an invitee. Plaintiff concedes that this is not a case where the premises, i.e., the swimming pool, were other than properly constructed and maintained. Plaintiff concedes that decedent was voluntarily intoxicated when he entered the swimming pool. Hence, the issue is whether defendants owed a duty to decedent to prevent him from entering the swimming pool, given the facts as portrayed by plaintiff.
In cases where the property owner is asked to answer in damages for injuries caused to third parties as a result of the alleged negligence of the property owner, the issue is defined as the existence of a duty to the public, as measured by whether the injury to the third party was foreseeable. (Pink v Rome Youth Hockey Assn., Inc., 28 NY3d 994 [2016] [no liability as against hockey league for injury to a hockey fan caused by an individual later convicted of assaultive conduct during a melee in the stands]; Lizarzaburo v Schmergel, 135 AD3d 833 [2d Dept 2016] [no liability for injury and wrongful death as against defendant homeowner, not present, when plaintiff decedent drowned in defendant’s swimming pool after accompanying defendant housekeeper to the house and drinking alcohol he brought there; housekeeper held to have no common-law duty to protect decedent from the results of plaintiff decedent’s voluntary intoxication]; Heyman v Harooni, 132 AD3d 950 [2d Dept 2015] [no liability against the parents, not present, for injury to an underage drinker caused by another intoxicated guest where daughter hosted the underage drinking party unknowingly to her parents].)
The issue is not whether the property owner can be held responsible for facilitating the voluntary intoxication of individuals who then cause injury to third parties, but rather whether the property owner can be held responsible for providing the alcohol to the voluntarily intoxicated individual who then causes injury to himself. In the former case, dependent upon the facts, it is clear that liability may attach. (See D'Amico v Christie, 71 NY2d 76 [1987].) Here, such is not the case since *804 there is no allegation that the instrumentality under the control of defendants, i.e., the swimming pool, was other than in good working order, or that defendants—one of whom was intoxicated himself—should have taken precautionary steps to anticipate the possibility that decedent would jump into the swimming pool after consuming alcohol for 10 hours.
The injury here was not suffered by a third party due to the actions of the voluntarily intoxicated individual, but rather to the individual himself. In Sheehy v Big Flats Community Day (73 NY2d 629 [1989]), plaintiff was an underage drinker who injured herself after having been served alcoholic beverages by an unincorporated association.[3] As applicable to plaintiff’s common-law action for damages occasioned by her injuries, caused by her being struck by a car while she was crossing the street after having been drinking at defendant’s fair, the Court continued to refuse to recognize a common-law cause of action against providers of alcoholic beverages in favor of persons injured as a result of their own voluntary intoxication.
This court finds that this reasoning likewise applies to the complaint now under consideration. In adherence with the constricts of CPLR 3211 (a), the court finds that plaintiff has failed to show, within the confines of the complaint, that a cause of action is stated. Accepting the facts as alleged in the complaint as true, and taking into consideration plaintiff’s affidavit, and after according plaintiff the benefit of every possible favorable inference, the court finds that plaintiff cannot establish a cognizable cause of action. (Sokoloff v Harriman Estates Dev. Corp.; Leon v Martinez; Anderson v Armentano.)
The court has considered the additional contentions of the parties not specifically addressed herein. To the extent any relief requested by either party was not addressed by the court, it is hereby denied. Accordingly, it is hereby ordered that the motion of defendants Valdemiro Santos and Regina Santos, as against plaintiff Sálete Martins Alves, made pursuant to CPLR 3211 (a) (7) is granted, and the complaint is dismissed.

. Mr. Santos reported to the police that he went into the hot tub and not the pool because he is not a strong swimmer. (Plaintiff’s exhibit B, police report at 1.)

. The autopsy report (plaintiff’s exhibit C) indicates the presence of lidocaine and amiodarone in decedent’s blood which may have been known to plaintiff, but is not alleged to have been known by defendants.

. The Dram Shop Act (General Obligations Law § 11-100) regarding service by commercial establishments to underage drinkers was not applicable because there was no injury to a third party, and Penal Law § 260.20 (unlawfully dealing with minors) was not applicable due to the Court’s finding that the Penal Law proscription did not create a civil cause of action separate and apart from the Dram Shop Act.