Cardenas v Rochester Regional Health (2021 NY Slip Op 01641)





Cardenas v Rochester Regional Health


2021 NY Slip Op 01641


Decided on March 19, 2021


Appellate Division, Fourth Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on March 19, 2021
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: CARNI, J.P., LINDLEY, WINSLOW, BANNISTER, AND DEJOSEPH, JJ.


914 CA 20-00131

[*1]JOHN CARDENAS, AS ADMINISTRATOR OF THE ESTATE OF ABRAHAM E. CARDENAS, DECEASED, PLAINTIFF-RESPONDENT,
v
ROCHESTER REGIONAL HEALTH, UNITY MENTAL HEALTH, ROCHESTER GENERAL HOSPITAL, MARC JOHNSON, MHC, DEFENDANTS-APPELLANTS, ET AL., DEFENDANT. 






HARRIS BEACH PLLC, PITTSFORD (SVETLANA K. IVY OF COUNSEL), FOR DEFENDANTS-APPELLANTS.
FITZSIMMONS, NUNN & PLUKAS, LLP, ROCHESTER (JOSEPH R. PLUKAS OF COUNSEL), FOR PLAINTIFF-RESPONDENT. 


 Appeal from an order of the Supreme Court, Monroe County (John J. Ark, J.), entered November 25, 2019. The order denied the motion of defendants Rochester Regional Health, Unity Mental Health, Rochester General Hospital and Marc Johnson, MHC, to dismiss the complaint against them. 
It is hereby ORDERED that the order so appealed from is unanimously reversed on the law without costs, the motion is granted, and the complaint against defendants Rochester Regional Health, Unity Mental Health, Rochester General Hospital, and Marc Johnson, MHC, is dismissed.
Memorandum: Plaintiff, as administrator of decedent's estate, commenced this medical malpractice and wrongful death action against Rochester Regional Health, Unity Mental Health (UMH), Rochester General Hospital (RGH), and Marc Johnson, MHC (collectively, defendants), among others, seeking damages for, inter alia, the negligent treatment of plaintiff's wife and failure to provide proper instruction to her family members regarding her mental health care. The complaint alleges that plaintiff's wife was hospitalized for several weeks at RGH due to her mental health status. In the days immediately following her discharge, plaintiff's wife twice treated with Johnson at UMH. Shortly after his wife's second session with Johnson, plaintiff, prompted by his wife's worsening condition, began calling UMH at various times over the course of two days seeking additional care. He was advised that his wife should keep her upcoming psychiatric appointment, which was scheduled for approximately two weeks in the future. On the evening of the second day, plaintiff's wife killed their son (decedent) with a knife.
Defendants moved to dismiss the complaint against them pursuant to CPLR 3211 (a) (7), contending that they bore no duty to decedent because he was not their patient. Supreme Court denied defendants' motion. We reverse.
Whether defendants owed a duty of care to the child of their patient is an issue of law for a court to determine (see Davis v South Nassau Communities Hosp., 26 NY3d 563, 572 [2015]; Pingtella v Jones, 305 AD2d 38, 40 [4th Dept 2003], lv dismissed 100 NY2d 640 [2003], rearg denied 1 NY3d 594 [2004]). "Foreseeability of injury does not determine the existence of duty" (Eiseman v State of New York, 70 NY2d 175, 187 [1987]; see Pingtella, 305 AD2d at 40). Instead, "[c]ourts resolve legal duty questions by resort to common concepts of morality, logic and consideration of the social consequences of imposing the duty" (Tenuto v Lederle Labs., Div. [*2]of Am. Cyanamid Co., 90 NY2d 606, 612 [1997]).
Generally, medical providers owe a duty of care only to their patients, and courts have been reluctant to expand that duty to encompass nonpatients because doing so would render such providers liable "to a prohibitive number of possible plaintiffs" (McNulty v City of New York, 100 NY2d 227, 232 [2003]; see Pingtella, 305 AD2d at 41). The scope of that duty of care has, on occasion, been expanded to include nonpatients where the defendants' relationship to the tortfeasor " 'place[d] [them] in the best position to protect against the risk of harm,' " and "the balancing of factors such as the expectations of the parties and society in general, the proliferation of claims, and public policies affecting the duty proposed herein . . . tilt[ed] in favor of establishing a duty running from defendants to plaintiffs under the facts alleged" (Davis, 26 NY3d at 576; see also Tenuto, 90 NY2d at 613-614). Under the circumstances of this case, however, we conclude that those factors do not favor establishing a duty running from defendants to decedent. The complaint herein does not allege that plaintiff's wife sought treatment specifically in order to prevent physical injury to decedent or her family, that defendants were aware whether she had threatened or displayed violence towards her family in the past, or that defendants directly put in motion the danger posed by the patient (see Pingtella, 305 AD2d at 41-42; cf. Davis, 26 NY3d at 576-577; Tenuto, 90 NY2d at 613-614). As we have previously stated, "[w]hile the temptation is always great to provide a form of relief to one who has suffered, it is well established that the law cannot provide a remedy for every injury incurred . . . Were we to extend defendant[s'] duty to the child herein, there would be a far-reaching effect on physicians who treat patients with children. Physicians should be permitted to limit their treatment to the best interests of the patient and leave to others the responsibility for the nonmedical concerns of third parties who may be affected by that treatment" (Pingtella, 305 AD2d at 42-43 [internal quotation marks omitted]).
Entered: March 19, 2021
Mark W. Bennett
Clerk of the Court