OPINION OF THE COURT
 

 Alexander, J.
 

 In November 1979, plaintiff, while a customer at a gas station in Brewster, New York, was struck by a speeding car that crashed into the gas station and seriously injured him. The car was owned and operated by Emily Shaw,
 
 [1]
 
 who on the date of the accident, was a 73-year-old voluntary resident of the defendant Bethel Methodist Home with a medical condition that left her susceptible to fainting spells and blackouts. The issue presented on this appeal is whether defendants Bethel and the facility’s admitting physician, Dr. Argenziano, owed to plaintiff — an unidentified member of the public — a duty either to prevent Shaw from driving or to warn her of the dangers of driving given her medical condition. We hold that in the circumstances presented, defendants were under no duty to prevent Shaw from operating a motor vehicle off the premises, or to warn her of any danger of her so doing.
 

 I.
 

 Defendant, Bethel Methodist Home (Bethel), operates as a health-related facility, required by statute to provide its residents with "lodging, board and physical care including, but not limited to, the recording of health information, dietary supervision and supervised hygienic services” (Public Health Law §2801 [4] [b]; 10 NYCRR 414.1 [a] [1]); health-related facilities afford to residents some degree of institutional care and services, but not the degree required of a hospital or a skilled nursing facility
 
 (see,
 
 Public Health Law § 2801 [2], [4] [a], [b]; 10 NYCRR 414.1 [c] [8]). Shortly before her admission
 
 *7
 
 to Bethel on October 10, 1979, Shaw had been hospitalized for a stroke which left her susceptible to fainting spells and blackouts. Indeed, it is not now disputed that the accident was a consequence of her having blacked out at the wheel of her automobile. Pursuant to her contract with Bethel, Shaw became a voluntary resident of the facility and consented to routine medical treatment and inoculations and restraints as ordered by the facility’s physician. She further agreed to allow Bethel "to act in any emergency, in any way it deems necessary for the benefit of the resident”, but insofar as she was a voluntary resident, she did not relinquish general autonomy.
 

 Upon admission to Bethel, Shaw was examined by defendant, Dr. Elio Argenziano, Bethel’s medical director and the physician responsible for overseeing the health care of all the residents. Pursuant to regulations, Dr. Argenziano took Shaw’s medical history and conducted the admission examination
 
 (see,
 
 10 NYCRR 741.1 [k]). Dr. Argenziano thereafter issued an order authorizing Shaw to leave Bethel unaccompanied. He did not question her as to whether she owned a car, whether she knew how to drive, or whether she intended to drive while a resident at Bethel.
 

 Plaintiff commenced this action to recover damages for personal injury against Shaw, Bethel and Dr. Argenziano. The crux of plaintiff’s claim against defendants Bethel and Dr. Argenziano is that both were negligent in failing to prohibit Shaw from operating a motor vehicle when they knew or had reason to know that Shaw might, because of her medical condition, blackout at the wheel. Plaintiff also claimed that defendants, and particularly Dr. Argenziano as Shaw’s attending physician, were negligent in failing to warn her of the danger of her driving in her condition. The jury returned a verdict in plaintiff’s favor and apportioned liability in the amount of 10% to the estate of Shaw, 30% to Bethel and 60% to Dr. Argenziano. With respect to defendants Bethel and Dr. Argenziano, the Trial Judge set aside the verdict and directed judgment in their favor, concluding that plaintiff had failed to establish that the breach of any duty owed was the proximate cause of the injuries sustained. The Appellate Division affirmed, holding that neither defendant owed a duty to plaintiff —a member of the public — either to prevent a resident from, or to warn her against, operating a motor vehicle off the facility’s premises. The appeal is here by leave of this court, and we now affirm.
 

 
 *8
 
 II.
 

 The question of whether a member or group of society owes a duty of care to reasonably avoid injury to another is of course a question of law for the courts
 
 (Eiseman v State of New York,
 
 70 NY2d 175, 187;
 
 De Angelis v Lutheran Med. Center,
 
 58 NY2d 1053, 1055). In the ordinary circumstance, common law in the State of New York does not impose a duty to control the conduct of third persons to prevent them from causing injury to others; liability for the negligent acts of third persons generally arises when the defendant has authority to control the actions of such third persons
 
 (D’Amico v Christie,
 
 71 NY2d 76, 88-89;
 
 see, Eiseman v State of New York,
 
 70 NY2d 175, 191,
 
 supra; Pulka v Edelman,
 
 40 NY2d 781, 783;
 
 see generally,
 
 Restatement [Second] of Torts §§ 314, 315). This is so, we have said, even where "as a practical matter” defendant could have exercised such control
 
 (D’Amico v Christie,
 
 71 NY2d 76, 88,
 
 supra; Pulka v Edelman,
 
 40 NY2d 781, 784,
 
 supra).
 

 Of course, there exist special circumstances in which there is sufficient authority and ability to control the conduct of third persons that we have identified a duty to do so. Thus, we have imposed a duty to control the conduct of others where there is a special relationship: a relationship between defendant and a third person whose actions expose plaintiff to harm such as would require the defendant to attempt to control the third person’s conduct; or a relationship between the defendant and plaintiff requiring defendant to protect the plaintiff from the conduct of others
 
 (see, Pulka v Edelman,
 
 40 NY2d 781, 783,
 
 supra;
 
 Harper & Kime,
 
 Duty to Control the Conduct of Another,
 
 43 Yale LJ 886, 887-888). Under the appropriate circumstances, the traditional master-servant relationship, the relationship between a parent and child, or the relationship between a common carrier and its passenger are examples of such relationships
 
 (see generally,
 
 3 Harper and James, Torts § 18.7, at 732-742 [2d ed]).
 

 Here, plaintiff concedes the lack of any relationship between himself and defendants. Thus, the imposition of a duty on defendants would have to arise out of some special relationship between defendants and Shaw such as would require them to control Shaw’s conduct for the benefit of plaintiff. We conclude, however, that neither Bethel nor Dr. Argenziano had the necessary authority or ability to exercise such control over Shaw’s conduct so as to give rise to a duty
 
 *9
 
 on their part to protect plaintiff — a member of the general public
 
 (see generally, Eiseman v State of New York,
 
 70 NY2d 175
 
 supra; Schrempf v State of New York,
 
 66 NY2d 289, 296).
 

 Shaw was a voluntary resident at Bethel with no medical reason — as is implicit in Dr. Argenziano’s order — impeding her ability to leave Bethel unaccompanied; Shaw could come and go as she pleased. Plaintiff points to no provision of the Public Health Law or regulation governing health-related facilities that either authorizes or requires defendants to prevent Shaw — in nonemergency situations — from leaving the premises or to control her conduct while she is off the premises. Indeed, the statute and regulations provide for just the opposite — the right of the voluntary resident to make independent personal decisions (10 NYCRR 414.14 [a] [19]), the right to exercise civil and religious liberties (Public Health Law § 2803-c [3] [a]), and the right to be free from physical restraint, except where emergency dictates otherwise (Public Health Law § 2803-c [3] [h];
 
 see, e.g., Cartier v Long Is. Coll. Hosp.,
 
 111 AD2d 894;
 
 Harland v State of California,
 
 75 Cal App 3d 475, 142 Cal Rptr 201, 205). Nor did the contractual relationship between Bethel and Shaw give defendants the authority in nonemergency circumstances to restrict Shaw from leaving the facility, or to control her conduct while she was away from the facility.
 

 Plaintiff’s alternative theory of liability — that defendants owed plaintiff a duty to warn Shaw that her medical condition impaired her ability to operate a motor vehicle safely — is also unavailing. A physician’s duty of care is ordinarily one owed to his or her patient. With respect to the physician-patient relationship giving rise to a duty owing to members of an indeterminate class of persons, we have only recently stated in the context of a physician reporting to a college admissions office the results of a physical examination of an applicant to the college that "the physician plainly owed a duty of care to his patient and to persons he knew or reasonably should have known were relying on him for this service to his patient”, but that the physician did not "undertake a duty to the community at large”
 
 (Eiseman v State of New York,
 
 70 NY2d 175, 188,
 
 supra).
 
 Plaintiff directs our attention to those jurisdictions that have held that a treating physician’s relationship with a patient was sufficient to impose a duty in favor of unidentified members of the public to warn the patient of the adverse effects of prescribed medication on the safe operation of an automobile
 
 (see, e.g., Gooden v Tips,
 
 651 SW2d 364 [Tex]
 
 *10
 
 [imposing on treating physician duty to warn but not to control conduct];
 
 Kaiser v Suburban Transp. Sys.,
 
 65 Wash 2d 461, 398 P2d 14 [same];
 
 Welke v Kuzilla,
 
 140 Mich App 658, 365 NW2d 205;
 
 but see, Kirk v Reese Hosp. & Med. Center,
 
 117 Ill 2d 507, 513 NE2d 387 [no duty in favor of general public]). No such situation is presented here. Dr. Argenziano was not Shaw’s treating physician, and therefore was under no legal obligation to warn her of possible dangers involved in activities in which she chose to engage off the premises of the facility. Nor has plaintiff demonstrated that Shaw’s impaired driving ability was attributable to any medication prescribed to her by Dr. Argenziano without appropriate warnings.
 
 [2]
 

 Insofar as plaintiff failed to demonstrate what is essential to the maintenance of this action against these defendants — that defendants owed a duty to plaintiff to prevent Shaw from driving off the premises of their facility — the Appellate Division correctly affirmed the trial court’s setting aside the jury verdict and directing entry of judgment in defendants’ favor.
 

 Accordingly, the order of the Appellate Division should be affirmed, with costs.
 

 Chief Judge Wachtler and Judges Simons, Kaye, Titone, Hancock, Jr., and Bellacosa concur.
 

 Order affirmed, with costs.
 

 [1]
 

 . Shaw has since died of causes unrelated to the automobile accident, and her estate is represented by defendant Public Administrator.
 

 [2]
 

 . For these reasons, the third-party complaint brought by the Public Administrator against Dr. Argenziano was also properly dismissed.