■ Tammie Engelhart, Respondent, v County of Orange et al., Appellants, and Paul Harnisch et al., Respondents. [790 NYS2d 704]—

In an action, inter alia, to recover damages for wrongful death, the defendants Michael I. Levy and the County of Orange separately appeal, as limited by their respective briefs, from so much of an order of the Supreme Court, Orange County (McGuirk, J.), dated October 21, 2003, as denied those branches of their respective motions which were for summary judgment dismissing the complaint and all cross claims insofar as asserted against them.

Ordered that the order is reversed, on the law, with one bill of costs, the motions for summary judgment are granted, and the complaint and all cross claims insofar as asserted against the appellants are dismissed.

On the morning of June 26, 1999, the plaintiff's decedent was fatally injured when the defendant Paul Harnisch, a voluntary psychiatric patient with a bipolar disorder of the defendant Dr. Michael L. Levy, struck him while driving an automobile on the Heritage Trail in Orange County. Heritage Trail is a paved pathway for pedestrians, bicyclists, and skaters. Motor vehicles, except emergency vehicles, are prohibited from using Heritage Trail.

The night before this tragic accident, based upon a telephone conversation with Harnisch's wife, Dr. Levy determined that Harnisch needed to be involuntarily hospitalized immediately because of his aggressive behavior. Dr. Levy instructed Harnisch's wife to call the police to take Harnisch from their home to a hospital.

According to Mrs. Harnisch, Dr. Levy told her that he could not "do anything" personally to hospitalize her husband. Mrs. Harnisch did not call the police that night. She told Dr. Levy that she feared that the police would dismiss her call as a domestic dispute and she did not wish to reveal her husband's condition to the police to protect his reputation as an attorney in the office of the Orange County District Attorney.

That evening, Harnisch fell into a deep sleep, after hardly sleeping for five days, and Mrs. Harnisch, relieved, believed the medication prescribed by Dr. Levy "was kicking in finally." However, Harnisch awoke at 4:30 A.M., and Mrs. Harnisch decided that her husband would have to go to the hospital that day. Unfortunately, Harnisch managed to leave the house on his own and drove away in his car, resulting in the tragic incident now at issue.

Dr. Levy moved for summary judgment based, in part, on an affidavit from his psychiatric expert. The expert stated that "Dr. Levy correctly diagnosed Paul Harnisch with bipolar disorder as of June 25, 1999 . . . [and] prudently recommended that the patient be involuntarily committed to a mental health facility that same night." The expert further stated that Dr. Levy's decision to wait for Mrs. Harnisch "to agree to involve the police . . . was a reasonable and appropriate judgment under all of the circumstances."

In opposition to Dr. Levy's motion, the plaintiff offered an affidavit from her psychiatric expert, who stated that Dr. Levy departed from the acceptable standard of psychiatric care, inter alia, by failing to initiate telephone calls to Mrs. Harnisch to advocate for Harnisch's involuntary hospitalization, and personally call the police to inform them of Harnisch's immediate need for hospitalization. According to the expert, Dr. Levy's deviations from accepted psychiatric practice proximately caused Harnisch's motor vehicle accident of June 26, 1999.

To prove a prima facie case of negligence, a plaintiff must demonstrate the existence of a duty, a breach of that duty, and that the breach of such duty was a proximate cause of his or her injuries (*see Pulka v Edelman,* 40 NY2d 781 [1976]; *Gordon v Muchnick,* 180 AD2d 715 [1992]). Absent a duty of care, there is no breach and no liability (*see Pulka v Edelman, supra; Gordon v Muchnick, supra*).

"The question of whether a member or group of society owes a duty of care to reasonably avoid injury to another is of course a question of law for the courts" (*Purdy v Public Adm'r of County of Westchester,* 72 NY2d 1, 8 [1988]). Generally, there is no "duty to control the conduct of third persons to prevent them from causing injury to others," even where, as a practical matter, the defendant could have exercised such control (*id* at 8). Yet, "there exist special circumstances in which there is sufficient authority and ability to control the conduct of third persons" that a duty to do so will be imposed (*id.* at 8; *see Pulka v Edelman, supra* at 783).

Generally, a doctor does not have sufficient control over a voluntary outpatient to impose liability (*see Pingtella v Jones,* 305 AD2d 38 [2003]; *Wagshall v Wagshall,* 148 AD2d 445 [1989]; *Rebollal v Payne,* 145 AD2d 617 [1988]; *Cartier v Long Is. Coll. Hosp.,* 111 AD2d 894 [1985]). Liability can be imposed for releasing a mental patient from an inpatient facility (*see Winters v New York City Health & Hosps. Corp.,* 223 AD2d 405 [1996]). This is based upon the facility's duty to restrain dangerous or potentially dangerous persons under its control (*see Schrempf v State of New York,* 66 NY2d 289, 294 [1985]).

In *Clark v State of New York* (99 AD2d 616 [1984]) liability was imposed upon the State for failure to hospitalize an outpatient. However, in that case, the patient had a history of being in and out of in-patient treatment and his doctor had an opportunity to place him on in-patient status when the patient made an office visit for treatment.

In this case, there is no evidence that Dr. Levy had such an opportunity, nor did he have such control (*see* Mental Hygiene Law § 9.27). On the evening of June 25, 1999, he advised Mrs. Harnisch to call the police to involuntarily hospitalize Harnisch. Mrs. Harnisch ignored that advice to protect her husband's reputation. It is undisputed that Harnisch's brother in fact called the police to pick him up the following day, after he drove away alone in the Harnisch's family car. Before the police could pick him up, he struck the plaintiff's decedent with the car. Based upon the undisputed facts, there is no basis to impose liability against Dr. Levy and his motion for summary judgment should have been granted.

With respect to the County of Orange, "a municipality is under a duty to maintain its park and playground facilities in a reasonably safe condition" (*Nicholson v Board of Educ. of City of N.Y.,* 36 NY2d 798, 799 [1975]; *Muzich v Bonomolo,* 209 AD2d 387, 388-389 [1994]). This duty "includes not only physical care of the property but also prevention of ultrahazardous and criminal activity of which it has knowledge" (*Benjamin v City of New York,* 64 NY2d 44, 46 [1984]; *Muzich v Bonomolo, supra*).

Although the County of Orange did erect barriers at various locations along the trail to prevent the illegal dumping of building refuse, the area where Harnisch entered the Heritage Trail was not plagued by such problems. In any event, Harnisch's actions constituted a superseding cause for which the County cannot be held responsible (*see Derdiarian v Felix Contr. Corp.,* 51 NY2d 308 [1980]; *Farrell v Lowy,* 192 AD2d 691 [1993]). Accordingly, the Supreme Court should have granted the County's motion for summary judgment: H. Miller, J.P., Adams, Goldstein and Spolzino, JJ., concur.