[857 NYS2d 550]

Jon Avins, Individually and as Father and Natural Guardian of Isabella Avins, an Infant, Respondent, v Federation Employment and Guidance Service, Inc., et al., Appellants, et al., Defendants.

First Department, May 6, 2008

## APPEARANCES OF COUNSEL

*McAloon & Friedman, P.C.*, New York City (*Adam R. Gold-smith* and *Timothy J. O'Shaughnessy* of counsel), for appellants.

*Ronemus & Vilensky*, New York City (*Robin Mary Heaney* of counsel), for respondent.

## OPINION OF THE COURT

ANDRIAS, J.

Because the complaint fails to allege any facts that would give rise to a duty of care on the part of defendants-appellants to control the conduct of a resident in one of their community residence programs or to prevent the resident from causing injury to the general public, we reverse and grant their motion to dismiss the complaint.

According to the complaint and newspaper articles submitted by plaintiff in opposition to the motion, shortly after 5:00 P.M., on Wednesday September 7, 2005, 10-month-old Isabella Avins was seriously injured in an apparently motiveless attack when, as she was being walked home in her stroller by her nanny, a man lurched forward, as if from nowhere, leaned towards the baby stroller and stabbed her in the stomach. Her assailant was 48-year-old Bernard Derr, who lived several blocks away in a supportive housing unit operated by defendant Federation Employment and Guidance Service, Inc. (FEGS), a not-for-profit organization.

FEGS operates a range of programs providing housing and various support services to individuals pursuant to contracts

with the city, state and federal governments. The FEGS network of residential services enables it to work with otherwise homeless people until they are placed in permanent housing. The FEGS residential program is primarily provided for persons currently being treated in state or city psychiatric centers or persons with a recent history of hospitalization. Among these programs are community residence programs, specifically the Intensive Supportive Apartment Program (ISAP), which is funded and licensed by the New York State Office of Mental Health. ISAPs provide housing and supportive services, but not medical or psychiatric services, which are not required or, it should be noted, authorized by FEGS's contract with the Office of Mental Health.

As pertinent to this appeal, FEGS leases apartments in a building at 270 Fort Washington Avenue in Upper Manhattan, where it provides ISAP services for 36 residents, paying rent to the landlord plus utility and telephone bills. These apartments have kitchens which are equipped with all of the utensils, including knives, necessary for cooking, and have bathrooms, as well as one bedroom for each resident. Unlike other "supervised residences" operated by FEGS, where its staff is on site at all times, in ISAPs, FEGS's staff members, who are nonprofessionals, make daily site visits and are available by telephone 24 hours a day, 7 days a week.

According to Margaret Moran, FEGS's senior vice-president for behavioral health residential services, who submitted an affidavit in support of defendants-appellants' motion, ISAPs provide a moderate level of supportive services but no treatment services. The supportive services provided by an ISAP include daily visits to residents' apartments to assess whether the apartment is clean, the resident has food in the kitchen and the resident is maintaining personal hygiene and laundering his or her clothes. Periodically, a staff member will ask a resident to count out his or her medication to ensure that there is sufficient medication on hand until the next scheduled refill. FEGS's staff may also inquire as to whether the residents are attending their mental health day programs. According to Ms. Moran, the goal is for residents to learn to do all these things regularly without prompting. Ideally, upon demonstrating that they can reliably do these things without prompting, residents are eventually moved to a different housing program in which the apartment visits are less frequent and the residents have less contact with FEGS's staff.

Ms. Moran states that the ISAP has no legal right to restrict its residents' freedom of movement, and there are no curfews or limitations on a resident's ability to come and go. If residents are going to be away for an extended period of time, FEGS asks them to inform it in advance. There is no requirement that a resident be present in the apartment when a FEGS staff member visits, and residents are free to move out. FEGS's nonprofessional staff constantly speak among themselves about the residents and, if they suspect that a resident is not attending his or her outside program or the resident's abilities to live independently seem to be deteriorating, someone at ISAP may telephone or otherwise communicate with the resident's mental health program and/or psychiatrist. If a resident abruptly "decompensates," the ISAP staff may call 911 for police or EMS assistance. If a resident has not been seen for 24 hours or more and the resident's whereabouts are unknown, the staff will file a missing persons report with the Police Department.

When a potential resident is referred to FEGS, its central intake office, which is headed by a licensed social worker, reviews the potential resident's file. The prospective resident is then interviewed by a mental health professional and the central intake office determines whether a prospective resident is suited for one of FEGS's programs. Once a person becomes an ISAP resident, Medicaid requires, for billing purposes, that a physician certify once a year that the residential program is appropriate for the resident. FEGS plays no role in this annual certification.

While, in ordinary circumstances, New York common law does not impose a duty to control the conduct of third persons to prevent them from causing injury to others, there are special circumstances in which New York imposes a duty to control the conduct of others. One such circumstance is where there is a special relationship: "a relationship between defendant and a third person whose actions expose plaintiff to harm such as would require the defendant to attempt to control the third person's conduct; or a relationship between the defendant and plaintiff requiring defendant to protect the plaintiff from the conduct of others" (*Purdy v Public Adm'r of County of Westchester*, 72 NY2d 1, 8 [1988]).

The complaint alleges two causes of action against FEGS: the first for failure to supervise Mr. Derr, and the second for medical malpractice. Such causes of action are based upon allegations that FEGS was "aware of certain problems within the

apartment concerning defendant Derr and his interaction with his roommates and took no steps to alleviate same"; that FEGS "was made aware" that defendant Derr "exhibited certain unusual behaviors"; and that FEGS was "obligated to ensure that defendant Derr was not a harm, threat or menace to others."

In opposition to FEGS's motion to dismiss, counsel for plaintiff stated that, according to newspaper articles published following the attack on Isabella, FEGS's chief operating officer admitted that FEGS's staff members visit the residents "every morning—and sometimes twice a day—*to ensure that they take their medication* and to help with shopping and other services." (Emphasis in original.) Counsel further stated that, upon investigation by the police and District Attorney's office, it appeared that Mr. Derr had two roommates who described his "increasing erratic and deteriorating behavior," and he "was apparently not getting along with his roommates and had been acting out his frustration with his living situation."

Counsel argued that, if FEGS's staff members visited the apartment and spoke with the residents as they were supposed to, they would have known of Mr. Derr's increasingly psychotic behavior. Thus, she argued, FEGS failed to properly supervise and properly evaluate Mr. Derr on its daily visits and failed to take appropriate measures to avoid his psychotic deterioration and harming of others. Counsel further argued that there is a cognizable cause of action when a member of the general public is injured due to a mental health provider's failure to treat, monitor and/or retain a mentally ill patient and, in certain circumstances, such provider "may be liable for failing to control or commit a voluntary outpatient who later harms a member of the public" (quoting *Rivera v New York City Health & Hosps. Corp.*, 191 F Supp 2d 412, 419 [SD NY 2002]).

Specifically, in seeking to distinguish plaintiff's theory of liability from that espoused in *Purdy* (72 NY2d 1 [1988], *supra*), counsel stated that

> "plaintiff does not argue that defendant FEGS should not have allowed defendant DERR to leave the apartment. Rather, plaintiff argues and alleges that defendant DERR was negligently supervised in FEGS' 'Intensive Supportive Apartment Program', that this neglect caused him to deteriorate, and that his deterioration caused him to stab the infant plaintiff."

We all agree, however, that it cannot be reasonably inferred from the foregoing allegations that the oversight activities of FEGS's ISAP staff constitute medical treatment of its residents or bear a substantial relationship to the rendition of medical treatment. Thus, we all agree that plaintiff's second cause of action for medical malpractice should be dismissed.

The dissent would, however, sustain plaintiff's first cause of action for negligent supervision. Giving plaintiff's allegations every favorable intendment and relying upon the District Court's decision in *Rivera* (191 F Supp 2d at 417), the dissent finds that such allegations suffice to show a special relationship between FEGS and Mr. Derr involving its monitoring of his known psychiatric condition. Such special relationship, the dissent would find, imposes a duty of care on FEGS to protect members of the general public in the vicinity of the ISAP from Mr. Derr's known or reasonably discoverable violent propensities.

Since the motion court summarily denied defendants-appellants' motion to dismiss, with leave to renew after further discovery, we are unable to discern that court's reasons for its decision. Nevertheless, the dissent's reliance upon *Rivera* is misplaced since it can readily be distinguished on its facts and the applicable law.

In *Rivera*, plaintiff was pushed off a subway platform into the path of an oncoming subway train by a diagnosed paranoid schizophrenic named Perez who showed violent tendencies, had a known history of violence, and did not take his medications. In denying the motion of the relevant health care providers to dismiss plaintiff's claims that they were negligent in the medical and psychiatric treatment of their patient and in failing to protect the public from their patient, the court held that under New York law "mental health providers have a duty to their patients, they have a duty to third parties in certain circumstances, and they have mechanisms by which to seek to control patients, including outpatients, who are a threat to themselves or others" (*id.* at 422-423). It found, however, that the complaint failed to state a claim against two homeless shelters where Perez resided up to and including the date of the accident.

In so ruling, the court found that the complaint merely alleged that Perez was a resident at the facilities, that he exhibited violent propensities while he was there, and that the shelters failed to control or restrain him or to warn others about him. However, the court found that the complaint failed to allege any

facts that would suggest that the shelters had any ability to control Perez. There, as here, plaintiff did not allege that the shelters provided Perez with psychiatric care. Nor did the complaint indicate whether the facilities merely provided Perez with a bed and a place to sleep; whether he was free "to come and go"; whether he was receiving any counseling or psychiatric care at the facilities; and whether the facilities had standing to seek to involuntarily commit Perez pursuant to the Mental Hygiene Law and, if so, whether they were negligent in failing to do so (*id.* at 425).

Here, the allegations of the complaint likewise fail, as a matter of law, to demonstrate a special relationship sufficient to state a cause of action against FEGS for negligent failure to supervise or control Mr. Derr or to protect the infant plaintiff from him. Mr. Derr was a voluntary resident in the ISAP. He could come and go as he pleased, and plaintiff points to no statute or rule or regulation of the State Office of Mental Health or any contractual provision that gives FEGS the authority, in nonemergency circumstances, to restrict Mr. Derr from leaving the facility, or to control his conduct while he was away from the facility (*see Purdy*, 72 NY2d at 9). In *Purdy*, it was alleged that an elderly resident in a health-related facility, who was involved in an automobile accident, should not have been allowed to drive her car. The Court of Appeals held that even though the facility afforded the resident "lodging, board and physical care including, but not limited to, the recording of health information, dietary supervision and supervised hygienic services" (*id.* at 6 [internal quotation marks and citations ommitted]), as a voluntary resident, with no physical reason impeding her ability to leave the facility, the facility had no authority to prevent her from leaving the premises or to control her conduct while she was off the premises (*id.* at 9). Moreover, even where a person is receiving voluntary outpatient mental care from a mental health facility and the treating physician has reason to believe that the patient is not taking his or her medication as prescribed, the facility's control over the patient, and consequent duty to prevent him or her from harming others, is more limited than in cases involving persons confined to mental institutions (*Schrempf v State of New York*, 66 NY2d 289, 296 [1985]).

Given the foregoing, plaintiff has failed to allege a cause of action against the FEGS defendants for negligent supervision inasmuch as he does not allege that Mr. Derr had ever shown

any violent tendencies, that he had any violent behavior, or that he did not take his prescribed medications, if any. On the contrary, in the aftermath of the attack upon Isabella, the New York State Commission on Quality of Care and Advocacy for Persons with Disabilities reviewed the care and treatment provided to Mr. Derr. After a review of his record and conversations with FEGS's staff, it determined that Mr. Derr had been receiving services from FEGS since 1994. The Commission further found that Mr. Derr had no criminal history or history of aggression; that he was compliant with attending his day treatment program and taking his medications; and that FEGS's staff met with Mr. Derr on a regular basis and did not note any unusual behavior. It also found that Mr. Derr was attending and participating in a mental health program at the Manhattan Psychiatric Center on 125th Street.

Accordingly, the order of the Supreme Court, New York County (Milton A. Tingling, J.), entered April 4, 2007, which denied, with leave to renew after further discovery, defendants-appellants' motion pursuant to CPLR 3211 (a) (7) to dismiss the complaint as against them for failure to state a cause of action, should be reversed, on the law, without costs, the motion granted and the complaint dismissed as against defendants-appellants. The Clerk is directed to enter judgment accordingly.

SAXE, J. (dissenting in part). I respectfully disagree with the majority insofar as it dismisses the complaint in its entirety as against defendant Federation Employment and Guidance Service, Inc. (FEGS). I would affirm that part of the order denying defendants' dismissal motion as regards plaintiff's cause of action against FEGS based upon a theory of negligent supervision.

Defendant Bernard Derr stabbed 10-month-old Isabella Avins with a knife as her nanny wheeled her down the street in her stroller. Derr had a history of mental illness, and was under the care of the New York State Office of Mental Health. The complaint alleges that Derr been placed in housing operated by FEGS based on his qualification for outpatient mental health assistance; that FEGS' nonmedical employees undertook to daily monitor Derr's mental condition to ascertain whether he was taking his prescribed medication and attending assigned programs, and whether he needed medical assistance from outside sources; that Derr's behavior had become increasingly erratic; that he was accumulating knives in his apartment; and

that, as FEGS' employees were aware, he had begun to argue with his roommates. Given every favorable intendment, these allegations are sufficient to potentially establish that FEGS undertook, to some degree, the monitoring of Derr's known psychiatric condition such as would establish the requisite special relationship between FEGS and Derr, creating a duty of care on the part of FEGS to protect members of the general public in the vicinity of FEGS' housing site from Derr's known or reasonably discoverable violent propensities (*see Rivera v New York City Health & Hosps. Corp.*, 191 F Supp 2d 412, 417 [SD NY 2002]). While the complaint against two homeless shelters was dismissed in *Rivera*, in the absence of allegations that would tend to show that the defendants had any right or ability to monitor the person who attacked that plaintiff, the majority incorrectly equates the facts alleged in that case with those alleged here. In contrast to *Rivera*, the complaint here contains several allegations tending to establish that defendants had some right and ability to monitor their client's conduct and take appropriate actions, but failed to do so. Accordingly, it was appropriate for the motion court to sustain the negligent supervision claim.

GONZALEZ and SWEENY, JJ., concur with ANDRIAS, J.; MAZZARELLI, J.P., and SAXE, J., dissent in part in an opinion by SAXE, J.

Order, Supreme Court, New York County, entered April 4, 2007, reversed, on the law, without costs, defendants-appellants' motion pursuant to CPLR 3211 (a) (7) granted and the complaint dismissed as against defendants-appellants. The Clerk is directed to enter judgment accordingly.