[928 NYS2d 317]

JAY H. FOX, Respondent, v EVAN MARSHALL et al., Defendants, and SLS RESIDENTIAL, INC., et al., Appellants.

Second Department, August 9, 2011

**APPEARANCES OF COUNSEL**

*Landman Corsi Ballaine & Ford, P.C.*, New York City (*William G. Ballaine, Ronald E. Joseph* and *Jason C. Astle* of counsel), for SLS Residential, Inc. and others, appellants.

*Marcus, Ollman & Kommer, LLP*, New Rochelle (*Jonathan S. Klein* of counsel), for SDL Case Management, Inc. and others, appellants.

*Martin Clearwater & Bell, LLP*, New York City (*Stewart G. Milch, Peter T. Crean* and *Gregory J. Radomisli* of counsel), for Mark J. Stumacher, appellant.

*Heidell, Pittoni, Murphy & Bach, LLP*, New York City (*Daniel S. Ratner* of counsel), for Dave Moore, appellant.

*Winget, Spadafora & Schwartzberg, LLP*, New York City (*Matthew Tracy* of counsel), for Linda Padrof, appellant.

*Purcell & Ingrao, P.C.*, Mineola (*Lynn A. Ingrao* of counsel), for Jacqueline Marshall, appellant.

*Allegaert Berger & Vogel, LLP*, New York City (*Cornelius P. McCarthy* and *Ronald Busloff* of counsel), for respondent.

**OPINION OF THE COURT**

Sgroi, J.

In this case we address the often muddled issue of whether a legally viable medical malpractice cause of action can be asserted against a physician by a third party even though no doctor-patient relationship ever existed between these parties. Under the circumstances of this case, we conclude that the law does not recognize such a cause of action.

This action has its genesis in a particularly brutal and unsettling crime, the murder of Denice Fox by her neighbor, the defendant Evan Marshall, on August 17, 2006. Denice Fox, a retired teacher, lived on Willada Lane in Glen Cove, Nassau County. Prior to 2005, Evan Marshall lived, intermittently, at the home of his mother, the defendant Jacqueline Marshall, which was located two doors away from the Fox home. At the time of the crime, Marshall was 31 years old, had a history of substance abuse and psychiatric problems, and had, between August and November 2005, been treated at 10 different drug abuse and mental health facilities.

Beginning in November 2005, Marshall resided at and was treated at the defendant SLS Residential, Inc. (hereinafter SLS), a substance abuse and mental health facility located in Brewster, New York. According to the agreements governing patients-clients treated at SLS, enrollment in the facility's various programs was "voluntary." However, the agreements also stated that "a member" must give 30 days prior written notice of intention to "leave the program." There is no language in the agreements specifically governing a procedure whereby a member is permitted to temporarily leave the facility. The plaintiff alleges, however, that on August 16, 2006, the day before the murder, officials at SLS gave Marshall a "pass" to leave the facility for the ostensible reason of visiting his mother in Glen Cove. The plaintiff also alleges that Marshall was given the keys to his car and was permitted to leave the facility with $900 in cash, which he had earned from a part-time job while he was in treatment.

Upon arriving on Long Island, Marshall allegedly bought cocaine and then went to his mother's house, where he appar-

ently spent the night. On August 17, 2006, at approximately 8:30 A.M., Marshall allegedly drove his car onto a footpath in Glen Cove and intentionally struck a woman who had been jogging thereon. Later that morning, Marshall rang the doorbell at Denice Fox's home and forced his way into the house. He then proceeded to murder Ms. Fox and dismember her body, which he then transported to his mother's house. Ultimately, the crime was discovered and Marshall was arrested. He has since pleaded guilty to, inter alia, the crimes of murder in the first degree and burglary in the first degree.

This action was commenced by Jay H. Fox, the decedent's husband, as the executor of the estate and in his individual capacity, against SLS and its related corporate entities, SLS Health, Inc., SLS Wellness, Inc., Supervised Lifestyles, Inc., SDL Case Management, Inc., SDL Case Management, LLC, and SLS Health, LLC (hereinafter collectively the SLS defendants). The complaint also names as defendants various employees of those entities, including Mark J. Stumacher, a psychiatrist (hereinafter collectively the SLS employees), Evan Marshall, and Jacqueline Marshall. The complaint asserts, inter alia, various causes of action sounding in negligence against all of the defendants except Evan Marshall, and a separate cause of action to recover damages for medical malpractice against the SLS defendants and Stumacher. With respect to the malpractice cause of action, the complaint alleges, inter alia, that the SLS defendants and Stumacher "breached their duty to the public, and in particular to Denice Fox, by . . . failing to properly diagnose Evan Marshall."

All of the defendants, except Evan Marshall, moved and cross-moved pursuant to CPLR 3211 (a) (7) to dismiss the complaint insofar as asserted against them for failure to state a cause of action. In Stumacher's separate cross motion to dismiss the complaint insofar as asserted against him, he argued, inter alia, that a physician's duty of care is owed solely to his patient and, thus, he did not owe a duty of care to the decedent.

■ The Supreme Court denied the motion and cross motions holding, inter alia, that a mental health facility may owe a duty to protect the public from the actions of an outpatient where there is evidence that the facility has the ability to control the patient's actions and has knowledge that the patient may be a danger to himself and others. The Supreme Court also found that the allegations, if proven, would establish that Jacqueline Marshall owed a duty of care to the decedent. We modify and

conclude that the Supreme Court should have granted those branches of the motion and cross motions which were to dismiss the cause of action alleging medical malpractice, and should have granted Jacqueline Marshall's separate cross motion to dismiss the complaint insofar as asserted against her.

In determining a motion to dismiss the complaint for failure to state a cause of action, the court must "accept the facts as alleged in the complaint as true, accord plaintiffs the benefit of every possible favorable inference, and determine only whether the facts as alleged fit within any cognizable legal theory" (*Leon v Martinez*, 84 NY2d 83, 87-88 [1994]). Here, the facts alleged in the complaint clearly elicit a visceral response, and "[t]he human desire that there should be some recovery for this tragedy is understandable" (*Eiseman v State of New York*, 70 NY2d 175, 185 [1987]). Nevertheless, we cannot allow emotion to govern the determination of legal liability.

A duty of reasonable care owed by a tortfeasor to a plaintiff is elemental to any recovery in negligence (*see Pulka v Edelman*, 40 NY2d 781, 782 [1976]; *Palsgraf v Long Is. R.R. Co.*, 248 NY 339, 344 [1928]). To prove a prima facie case of negligence, a plaintiff must demonstrate the existence of a duty, a breach of that duty, and that the breach of such duty was a proximate cause of his or her injuries (*see Pulka v Edelman*, 40 NY2d 781 [1976]; *Gordon v Muchnick*, 180 AD2d 715 [1992]; *see also Akins v Glens Falls City School Dist.*, 53 NY2d 325, 333 [1981]). Absent a duty of care, there is no breach, and without breach there can be no liability (*see Pulka v Edelman*, 40 NY2d 781 [1976]; *Gordon v Muchnick*, 180 AD2d 715 [1992]). In addition, foreseeability of an injury does not determine the existence of duty (*see Strauss v Belle Realty Co.*, 65 NY2d 399, 402 [1985]; *Pulka v Edelman*, 40 NY2d 781 [1976]). However, "[u]nlike foreseeability and causation, both generally factual issues to be resolved on a case-by-case basis by the factfinder, the duty owed by one member of society to another is a legal issue for the courts" (*Eiseman v State of New York*, 70 NY2d at 187, citing *De Angelis v Lutheran Med. Ctr.*, 58 NY2d 1053, 1055 [1983]).

As a general rule, "[a] defendant . . . has no duty to control the conduct of third persons . . . to prevent them from harming others" (*D'Amico v Christie*, 71 NY2d 76, 88 [1987]; *see Pulka v Edelman*, 40 NY2d at 783). However, as stated by the Court of Appeals in the case of *Purdy v Public Adm'r of County of Westchester* (72 NY2d 1, 8 [1988]):

"Of course, there exist special circumstances in which there is sufficient authority and ability to control the conduct of third persons that we have identified a duty to do so. Thus, we have imposed a duty to control the conduct of others where there is a special relationship: a relationship between defendant and [the] third person whose actions expose plaintiff to harm such as would require . . . [one] defendant to protect the plaintiff from the conduct of others" (citations omitted; *see Pulka v Edelman*, 40 NY2d 781 [1976]; *Rivera v New York City Health & Hosps. Corp.*, 191 F Supp 2d 412, 417 [2002]).

There is no bright-line rule in New York regarding whether a mental health care provider treating a patient on a voluntary basis owes a duty of care to the general public (*see Pingtella v Jones*, 305 AD2d 38, 39 [2003]). Instead, the courts have examined the issue on a case-by-case basis. For example, in the case of *Schrempf v State of New York* (66 NY2d 289 [1985]), the claimant's husband was murdered by Joseph Evans, a voluntary patient at a New York State mental health facility. The claimant sued the State, the Court of Claims awarded damages, and a divided Appellate Division, Fourth Judicial Department, affirmed. However, the Court of Appeals reversed, stating in part:

"The only remaining question is whether the treating physician was negligent in failing to intervene in some manner . . . In view of the fact that Evans was a voluntary outpatient, the State's control over him, and consequent duty to prevent him from harming others, is more limited than in cases involving persons confined to mental institutions" (*id.* at 296).

In the later case of *Purdy v Public Adm'r of County of Westchester* (72 NY2d 1, 6 [1988]), the plaintiff was a customer at a gas station and was seriously injured when he was struck by a speeding car driven by Emily Shaw, a 73-year-old "voluntary resident of the defendant Bethel Methodist Home" (a mental health facility), who had a medical condition that left her susceptible to fainting spells and blackouts. The Court of Appeals stated that the issue presented was whether "Bethel and the facility's admitting physician . . . owed to plaintiff—an unidentified member of the public—a duty either to prevent Shaw from driving or to warn her of the dangers of driving

given her medical condition" (*id.*). The Court held that "[under the circumstances presented] neither Bethel nor [her admitting and treating physician] had the necessary authority or ability to exercise such control over Shaw's conduct so as to give rise to a duty on their part to protect plaintiff" (*Purdy v Public Adm'r of County of Westchester*, 72 NY2d at 8-9).

In the case of *Engelhart v County of Orange* (16 AD3d 369 [2005]), the plaintiff's decedent was fatally injured when the defendant, a voluntary psychiatric patient with a bipolar disorder, struck the decedent while driving an automobile on a pathway reserved for pedestrians. The Supreme Court in the *Engelhart* case denied summary judgment to the defendants. However, on appeal, this Court reversed, stating, in part, as follows:

> "In *Clark v State of New York* (99 AD2d 616 [1984]) liability was imposed upon the State for failure to hospitalize an outpatient. However, in that case, the patient had a history of being in and out of inpatient treatment and his doctor had an opportunity to place him on in-patient status when the patient made an office visit for treatment.
>
> "In this case, there is no evidence that Dr. Levy had such an opportunity, nor did he have such control" (16 AD3d at 372).

The above cases resulted in findings of no liability against the respective mental health care providers. Nevertheless, they demonstrate that there is a cognizable cause of action alleging negligence under circumstances where a defendant has the necessary authority or ability to exercise such control over a patient's conduct "so as to give rise to a duty on their part to protect . . . a member of the general public" (*Purdy v Public Adm'r of County of Westchester*, 72 NY2d at 8-9; *see Rivera v New York City Health & Hosps. Corp.*, 191 F Supp 2d 412 [2002]; *Winters v New York City Health & Hosps. Corp.*, 223 AD2d 405 [1996]).

In the case at bar, Marshall was not involuntarily confined to the SLS facility. Nonetheless, the SLS defendants and the SLS employees exercised a certain level of authority and control over Evan Marshall. Although the degree of such control is unclear at this stage of the case, the mere fact that Marshall appeared to need a facility-issued pass in order to visit his mother suggests that he was not completely free to leave the facility (*cf. Purdy v Public Adm'r of County of Westchester*, 72 NY2d at 9

["(the patient) could come and go as she pleased"]). The record also discloses that the SLS defendants and the SLS employees were aware of Marshall's severe psychological problems. Accordingly, accepting the facts as alleged in the complaint as true, and according "every possible favorable inference" to the plaintiff (*Goshen v Mutual Life Ins. Co. of N.Y.*, 98 NY2d 314, 326 [2002]; *see Leon v Martinez*, 84 NY2d at 87), the complaint herein sufficiently alleges a cause of action in negligence against the SLS defendants and the SLS employees (*see Rivera v New York City Health & Hosps. Corp.*, 191 F Supp 2d at 421; *see also Williams v State of New York*, 84 AD3d 412 [2011]).

■ However, under the circumstances of this case, the absence of any doctor-patient relationship between the decedent and the SLS defendants or Stumacher precludes a cause of action based on medical malpractice. It has long been recognized that, as a general rule, the sine qua non of a medical malpractice claim is the existence of a doctor-patient relationship. Indeed, it is this relationship which gives rise to the duty imposed upon the doctor to properly treat his or her patient (*see Bazakos v Lewis*, 12 NY3d 631, 634 [2009]; *Payette v Rockefeller Univ.*, 220 AD2d 69, 72 [1996]; *Ellis v Peter*, 211 AD2d 353 [1995]; *Heller v Peekskill Community Hosp.*, 198 AD2d 265 [1993]; *LoDico v Caputi*, 129 AD2d 361, 363 [1987]; *see also Spiegel v Goldfarb*, 66 AD3d 873, 874 [2009]). Therefore, a doctor's "duty of care is ordinarily [only] one owed to his or her patient" (*Purdy v Public Adm'r of County of Westchester*, 72 NY2d at 9), and correspondingly, the element of duty would normally be missing from a claim made against a doctor by one who is not that doctor's patient.

We recognize, however, under certain circumstances, the law is flexible enough to imply a duty of care by a doctor, in a medical malpractice context, to those who are not patients. For example, a doctor can "owe[ ] a duty of care [not only] to his patient [but also] to [those] persons he knew or reasonably should have known were relying on him for [a particular] service to his patient" (*Eiseman v State of New York*, 70 NY2d at 188). Thus, "in limited circumstances a physician's duty of care has been extended to a patient's family members" (*Cohen v Cabrini Med. Ctr.*, 94 NY2d 639, 642 [2000]; *see e.g. Tenuto v Lederle Labs., Div. of Am. Cyanamid Co.*, 90 NY2d 606, 612 [1997]; *Miller v Rivard*, 180 AD2d 331 [1992]; *see also Stewart v Brookdale Univ. Hosp. & Med. Ctr.*, 62 AD3d 860, 861 [2009]; *cf. Ellis v Peter*, 211 AD2d at 355-357). Nevertheless, a doctor does not undertake a duty to the community at large (*see Eiseman v*

*State of New York*, 70 NY2d at 188; *see also White v Guarente*, 43 NY2d 356, 361 [1977]).

As stated by this Court in the case of *Donohue v Copiague Union Free School Dist.* (64 AD2d 29, 33 [1978], *affd* 47 NY2d 440 [1979]):

> "Judicial recognition of the existence of a duty of care is dependent upon principles of sound public policy and involves the consideration of numerous relevant factors which include, *inter alia*: *moral* considerations arising from the view of society towards the relationship of the parties, the degree to which the courts should be involved in the regulation of that relationship and the social utility of the activity out of which the alleged injury arises; *preventative* considerations, which involve the ability of the defendant to adopt practical means of preventing injury, the possibility that reasonable men can agree as to the proper course to be followed to prevent injury, the degree of certainty that the alleged injuries were proximately caused by the defendant and the foreseeability of harm to the plaintiff; *economic* considerations, which include the ability of the defendant to respond in damages; and *administrative* considerations, which concern the ability of the courts to cope with a flood of new litigation, the probability of feigned claims and the difficulties inherent in proving the plaintiff's case."

Given these considerations, we conclude that the extension of a physician's duty of care beyond a narrow class of potential plaintiffs, such as immediate family members, cannot be supported under any analysis of duty. Clearly, medical professionals should not be singled out to be subjected to liability to a limitless class of potential plaintiffs (*see Ellis v Peter*, 211 AD2d at 356). In addition, we cannot justify such an extension of duty based solely upon moral or even ethical considerations. As indicated, "[w]hile moral and logical judgments are significant components of the [duty] analysis, we are also bound to consider the larger social consequences of our decisions and to tailor our notion of duty so that 'the legal consequences of wrongs [are limited] to a controllable degree' " (*Waters v New York City Hous. Auth.*, 69 NY2d 225, 229 [1987], quoting *Tobin v Grossman*, 24 NY2d 609, 619 [1969]). Therefore, regardless of any sense of outrage which is evoked by the heinous actions of Evan

Marshall, society's interest is not best served by concluding that a doctor who treats a patient, within the context of mental health, undertakes a duty to the public at large.

Indeed, it seems certain that such a greater risk of liability would negatively impact the medical treatment of mental health patients. At worst, mental healthcare providers may be reluctant to even undertake treatment of those who are most in need of their services. At the very least, the extension of possible liability would encourage such health care providers to opt in favor of what may be unnecessary confinement for such patients, and concomitantly, decrease the ability of such patients to ultimately successfully integrate into society.

■ For all of these reasons, the Supreme Court should have granted those branches of the motion and cross motion of the SLS defendants, and Stumacher's cross motion, which were pursuant to CPLR 3211 (a) (7) to dismiss the cause of action to recover damages for medical malpractice. The Supreme Court also should have granted Jacqueline Marshall's cross motion to dismiss the complaint insofar as asserted against her, as a parent cannot be held liable for the actions of an emancipated adult child (*see Troiano v DeMarco*, 50 AD3d 1020, 1021 [2008]; *Hartsock v Hartsock*, 189 AD2d 993, 994 [1993]; *Mimoun v Bartlett*, 162 AD2d 506 [1990]; *Fischer v Lunt*, 162 AD2d 1016 [1990]). In addition, while "landowners . . . have a duty to act in a reasonable manner to prevent harm to those on their property [including the] duty to control the conduct of third persons on their premises when they have the opportunity to control such persons and are reasonably aware of the need for such control" (*D'Amico v Christie*, 71 NY2d at 85 [citation omitted]; *see Kern v Ray*, 283 AD2d 402 [2001]), the murder did not occur on Jacqueline Marshall's premises.

Accordingly, the order dated September 11, 2009, is modified, on the law, (1) by deleting the provision thereof denying that branch of the motion of the defendants SLS Residential, Inc., SLS Health, Inc., SLS Wellness, Inc., and Supervised Lifestyles, Inc., which was to dismiss the cause of action to recover damages for medical malpractice insofar as asserted against them, and substituting therefor a provision granting that branch of the motion, (2) by deleting the provision thereof denying that branch of the cross motion of the defendants SDL Case Management, Inc., SDL Case Management, LLC, and SLS Health, LLC, which was to dismiss the cause of action to recover damages for medical malpractice insofar as asserted against them and

substituting therefor a provision granting that branch of the cross motion, (3) by deleting the provision thereof denying that branch of the cross motion of the defendant Mark J. Stumacher which was to dismiss the cause of action to recover damages for medical malpractice insofar as asserted against him, and substituting therefor a provision granting that branch of the cross motion, and (4) by deleting the provision thereof denying the cross motion of the defendant Jacqueline Marshall to dismiss the complaint insofar as asserted against her, and substituting therefor a provision granting the cross motion; as so modified, the order is affirmed insofar as appealed from.

MASTRO, J.P., FLORIO and LEVENTHAL, JJ., concur.

Ordered that the order dated September 11, 2009, is modified, on the law, (1) by deleting the provision thereof denying that branch of the motion of the defendants SLS Residential, Inc., SLS Health, Inc., SLS Wellness, Inc., and Supervised Lifestyles, Inc., which was to dismiss the cause of action to recover damages for medical malpractice insofar as asserted against them, and substituting therefor a provision granting that branch of the motion, (2) by deleting the provision thereof denying that branch of the cross motion of the defendants SDL Case Management, Inc., SDL Case Management, LLC, and SLS Health, LLC, which was to dismiss the cause of action to recover damages for medical malpractice insofar as asserted against them and substituting therefor a provision granting that branch of the cross motion, (3) by deleting the provision thereof denying that branch of the cross motion of the defendant Mark J. Stumacher which was to dismiss the cause of action to recover damages for medical malpractice insofar as asserted against him, and substituting therefor a provision granting that branch of the cross motion, and (4) by deleting the provision thereof denying the cross motion of the defendant Jacqueline Marshall to dismiss the complaint insofar as asserted against her, and substituting therefor a provision granting the cross motion; as so modified, the order is affirmed insofar as appealed from, with one bill of costs payable by the plaintiff to the defendant Jacqueline Marshall.