■ MARK CITERA, as Administrator of the Estate of JENNIE ETTA CITERA, Deceased, Respondent, v COUNTY OF SUFFOLK et al., Appellants. [945 NYS2d 375]—

In an action to recover damages for personal injuries and

wrongful death, the defendant County of Suffolk appeals (1) from an order of the Supreme Court, Suffolk County (Costello, J.), dated September 28, 2010, which denied its motion for summary judgment dismissing the complaint insofar as asserted against it, and (2) from so much of an order of the same court (Martin, J.), dated June 29, 2011, as denied that branch of its motion which was for leave to reargue its prior motion for summary judgment dismissing the complaint insofar as asserted against it, and, in effect, denied that branch of its motion which was for leave to renew its prior motion, and the defendant Federation Employment and Guidance Services, Inc., separately appeals from so much of the order dated June 29, 2011, as denied its motion for summary judgment dismissing the complaint insofar as asserted against it.

Ordered that the order dated September 28, 2010, is reversed, on the law, and the motion of the defendant County of Suffolk for summary judgment dismissing the complaint insofar as asserted against it is granted; and it is further,

Ordered that the appeal by the defendant County of Suffolk from the order dated June 29, 2011, is dismissed; and it is further,

Ordered that the order dated June 29, 2011, is reversed insofar as appealed from by the defendant Federation Employment and Guidance Services, Inc., on the law, and the motion of the defendant Federation Employment and Guidance Services, Inc., for summary judgment dismissing the complaint insofar as asserted against it is granted; and it is further,

Ordered that one bill of costs is awarded to the appellants.

The appeal by the defendant County of Suffolk from so much of the order dated June 29, 2011, as denied that branch of its motion which was for leave to reargue must be dismissed, as no appeal lies from an order denying reargument (*see Barany v Barany*, 71 AD3d 613 [2010]). The appeal by the County from so much of that order as, in effect, denied that branch of its motion which was for leave to renew must be dismissed as academic in light of our determination on the appeal from the order dated September 28, 2010.

On May 6, 2003, the plaintiff's decedent, Jennie Etta Citera (hereinafter the decedent), was murdered in her home by her son, William Sancimo. The plaintiff, Mark Citera, is the son of the decedent and the half brother of Sancimo. Prior to May 2003, Sancimo had been institutionalized several times for psychiatric problems. In March 2003 Pilgrim Psychiatric Center filed a petition pursuant to Mental Hygiene Law § 9.60 (commonly known as Kendra's Law) to authorize assisted outpatient

care for Sancimo. The petition was granted and Sancimo received outpatient psychiatric treatment from the defendant Federation Employment and Guidance Services, Inc. (hereinafter FEGS).

On May 4, 2003, an incident occurred at the plaintiff's home, where the plaintiff's family had gathered for a birthday party. The plaintiff testified at his deposition that when Sancimo arrived at his home, Sancimo's eyes were "racey" and his fists were clenched. The plaintiff told Sancimo that he needed to go to the doctor, and offered to take Sancimo to University Hospital in Stony Brook. Sancimo told the plaintiff that he would drive, and, on the way to the hospital, Sancimo started driving fast. According to the plaintiff, he told Sancimo to slow down before he killed them both, and Sancimo responded that it did not matter. Sancimo then drove back to the plaintiff's home, and engaged in a confrontation with the plaintiff's brother Joseph. The plaintiff told Sancimo to leave or the police would be called. As Sancimo left, he stated, "you Accardis, are all going to go down." "Accardis" referred to the plaintiff, Joseph, and the decedent, as Accardi was the decedent's maiden name.

At around the time Sancimo left, the Suffolk County police were called, and they arrived in approximately 30 minutes. The plaintiff gave them an account of Sancimo's psychiatric history, his history of violence, and a description of the events that led to the police being called. According to the plaintiff, the decedent also advised the police that Sancimo posed an imminent danger to her family, and that police intervention was needed to transport Sancimo to the hospital. The police told the plaintiff that they would pick up Sancimo if they found him in his home. Later that same evening, after learning that Sancimo had returned home, the plaintiff called 911. However, the dispatcher had no record of the earlier incident and said she would send a different unit back to the plaintiff's house. Upon speaking to the plaintiff, these new officers agreed to visit Sancimo at his home the next morning.

On May 5, 2003, John Clive Spiegel, a psychiatrist with FEGS's "ACT Team," who had been informed that Sancimo was involved in a verbal and physical altercation with Joseph, visited Sancimo at his home. After speaking to Sancimo, Speigel concluded that Sancimo was stable and did not need a further evaluation or psychiatric admission. On May 6, 2003, hours before the decedent was killed, the plaintiff was at his home when he received a telephone call from Sancimo. Afterwards, the plaintiff did not make any other calls prior to being informed that something had happened to the decedent.

The plaintiff commenced this action to recover damages for personal injuries and wrongful death against the County and FEGS. The County moved for summary judgment dismissing the complaint insofar as asserted against it. That motion was denied by the Supreme Court in an order dated September 28, 2010.

Thereafter, the County moved for leave to renew and reargue its prior motion for summary judgment dismissing the complaint insofar as asserted against it. Additionally, FEGS moved for summary judgment dismissing the complaint insofar as asserted against it. In an order dated June 29, 2011, the Supreme Court denied that branch of the County's motion which was for leave to reargue its prior motion for summary judgment and, in effect, denied that branch of the County's motion which was for leave to renew, and denied FEGS's motion for summary judgment.

The County established its prima facie entitlement to judgment as a matter of law by demonstrating that a special relationship did not exist between it and the decedent because the decedent did not justifiably rely on assurances from County representatives that they would take steps to protect her from Sancimo (*see Valdez v City of New York*, 18 NY3d 69 [2011]; *Cuffy v City of New York*, 69 NY2d 255, 260 [1987]; *Dixon v Village of Spring Val.*, 50 AD3d 943, 944 [2008]). In opposition, the plaintiff failed to raise a triable issue of fact. Accordingly, the Supreme Court should have granted the County's motion for summary judgment dismissing the complaint insofar as asserted against it.

The Supreme Court also should have granted FEGS's motion for summary judgment dismissing the complaint insofar as asserted against it. The question of whether a defendant owes a duty of care to another person is a question of law for the courts (*see Purdy v Public Adm'r of County of Westchester*, 72 NY2d 1, 8 [1988]; *Eiseman v State of New York*, 70 NY2d 175, 187 [1987]). Generally, there is no "duty to control the conduct of third persons to prevent them from causing injury to others," even where, as a practical matter, the defendant could have exercised such control (*Purdy v Public Adm'r of County of Westchester*, 72 NY2d at 8; *see Engelhart v County of Orange*, 16 AD3d 369, 371 [2005]; *Edwards v Mercy Home for Children & Adults*, 303 AD2d 543, 544 [2003]).

Yet, "there exist special circumstances in which there is sufficient authority and ability to control the conduct of third persons" that a duty to do so will be imposed (*Purdy v Public Adm'r of County of Westchester*, 72 NY2d at 8; *see Engelhart v*

*County of Orange*, 16 AD3d at 371). Thus, the Court of Appeals has recognized "a duty to control the conduct of others where there is a special relationship: a relationship between defendant and a third person whose actions expose plaintiff to harm such as would require the defendant to attempt to control the third person's conduct; or a relationship between the defendant and plaintiff requiring defendant to protect the plaintiff from the conduct of others" (*Purdy v Public Adm'r of County of Westchester*, 72 NY2d at 8; *see Schrempf v State of New York*, 66 NY2d 289, 294-295 [1985]; *Eiseman v State of New York*, 70 NY2d at 188-189; *Fox v Marshall*, 88 AD3d 131, 135-136 [2011]).

Here, FEGS demonstrated, prima facie, that it owed no duty to the decedent by virtue of the relationship between it and Sancimo or the relationship between it and the decedent. FEGS established that it did not have the necessary authority or ability to exercise the requisite control over Sancimo's conduct so as to give rise to a duty to protect the decedent, a member of the general public (*see Purdy v Public Adm'r of County of Westchester*, 72 NY2d at 8-9; *Engelhart v County of Orange*, 16 AD3d at 371; *see also* Mental Hygiene Law § 9.60 [n]; *cf. Fox v Marshall*, 88 AD3d at 137-138). Furthermore, FEGS demonstrated the absence of any relationship between it and the decedent which would impose upon it a duty of care on behalf of the decedent (*see Eiseman v State of New York*, 70 NY2d at 188-189; *Fox v Marshall*, 88 AD3d at 139-140; *Edwards v Mercy Home for Children & Adults*, 303 AD2d at 544).

In opposition to FEGS's prima facie showing, the plaintiff failed to raise a triable issue of fact as to whether FEGS owed the decedent a duty. Accordingly, the Supreme Court should have granted FEGS's motion for summary judgment dismissing the complaint insofar as asserted against it (*see Alvarez v Prospect Hosp.*, 68 NY2d 320, 324 [1986]). Angiolillo, J.P., Dickerson, Leventhal and Miller, JJ., concur.